BERGNER AND ENGEL BREWING COMPANY *vs.* ARTHUR
DREYFUS.

Suffolk.    March 8, 1898. — October 28, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Discharge in Insolvency not a Bar to an Action.*

A corporation of another State, having its main establishment there, is not affected
by a discharge here of a Massachusetts debtor, although the corporation has a
place of business here and a license under Pub. Sts. c. 100, § 10, and has ap-
pointed the commissioner of corporations its attorney for service of process
under St. 1884, c. 330, § 1.    FIELD, C. J. dissenting.

CONTRACT for beer and ale sold and delivered to the defend-
ant.    Writ dated September 30, 1896.    The case was submitted
to the Superior Court, and, after judgment for the plaintiff, to
this court, on appeal, upon agreed facts, in substance as follows.

The plaintiff during all the time of the transactions involved
in the action was a corporation organized under the laws of
Pennsylvania.    It never held a charter from this Common-
wealth, and had always complied with the laws of this Com-
monwealth regulating foreign corporations doing business here.
Its business was the manufacturing and selling malt and malt
liquors.    Its principal offices, where its meetings were held
and its books kept, were in Philadelphia, where its brewery
also was; and it manufactured nothing in this Commonwealth.
It sold its products at wholesale in this Commonwealth, and for
that purpose hired in its own name on Atlantic Avenue, Boston,
premises where it had an office and storage room, sufficient to
hold beer and ale for its daily business.    It owned and main-
tained on the premises a complete set of office furniture.    It also
owned and maintained in Boston horses and wagons sufficient
to deliver most of the goods which it sold in that city.    It re-
ceived from the board of police of the city of Boston a license
in its name, of the fourth class, to sell intoxicating liquors in
that city as a wholesale dealer, and it ·hired an agent styled a
" manager," a bookkeeper, and delivery men for the conduct of
its business in Boston.    It sent from Philadelphia all books used

at the office in Boston, and kept its accounts of the business which it did in Boston as follows.

The bills of lading of all goods sent to Boston were made out to " Sol. Bacharach, Manager, N. E. Depot." An invoice was made out to " The New England Depot," charging the goods at a certain price; but the manager was in no way liable to the plaintiff for the goods so sent, and never had title to them in any way. All sales made in Boston were entered by the Boston bookkeeper under a heading in this form : " A. B., in account with Bergner & Engel Brewing Co., N. E. Depot." A weekly statement of the account with each customer, and of the general business of the N. E. Depot, was rendered to the main office of the company in Philadelphia.

The beer and ale for which the plaintiff sought to recover were ordered by the defendant at the above described Boston office of the manager or other employees, all of whom resided in this Commonwealth, and were delivered from there in the plaintiff's wagons to the defendant at his restaurant in Boston.

Thereafter, the defendant, who was a citizen of this Commonwealth, filed a voluntary petition in insolvency in Suffolk County. He received his discharge before this action was brought. The plaintiff did not prove its claim in those proceedings, and has never received payment of any part thereof.

If the action was barred, judgment was to be entered for the defendant; otherwise, judgment was to be entered for the plaintiff for $554.23, with interest from November 13, 1896, and costs.

*B. S. Ladd,* (*T. F. Strange* with him,) for the defendant.

*H. H. Baker,* for the plaintiff.

HOLMES, J. This is a suit by a Pennsylvania corporation to recover a debt for goods sold and delivered here. The only defence is a discharge in insolvency under our statutes, which of course commonly is no defence at all. This was reaffirmed unanimously in 1890, after full consideration of the objections now urged, and it was decided, also, not for the first time, that the general language of the insolvent law was not intended to affect access to Massachusetts courts by a local rule of procedure unless the substantive right was barred by the discharge. *Phœnix National Bank* v. *Batcheller,* 151 Mass. 589. The grounds urged for an exception in the present case are that the

plaintiff, although its brewery and main offices are in Pennsylvania, has an office in Boston and maintains here a complete outfit for the distribution of its products, that it has a license of the fourth class under Pub. Sts. c. 100, § 10, and that it has complied with the laws regulating foreign corporations doing business here, including, we assume, that which requires the appointment of the commissioner of corporations its " attorney upon whom all lawful processes in any action or. proceeding against it may be served." St. 1884, c. 330, § 1. See St. 1895, c. 157.

We are of opinion that these facts are not enough to bring the plaintiff under the operation of the State insolvent law. It is settled that doing business here does not have that effect upon a citizen or corporation of another State. *Guernsey* v. *Wood,* 130 Mass. 503. *Regina Flour Mill Co.* v. *Holmes,* 156 Mass. 11. It is not pointed out what the license, whether valid or void, has to do with the matter, and we do not perceive that complying with the laws concerning foreign corporations ought to have any greater effect. We think it plain that the words just quoted from St. 1884, c. 330, § 1, do not mean that, by appointing the commissioner of corporations their attorney, foreign corporations agree not only that publication of notice in insolvency proceedings shall have the effect of personal service upon them in an action, but also that, as a result, they shall be subject to the jurisdiction of the State insolvency proceedings so as to be bound by a discharge.

The most that could be deduced from the appointment would be that, if on other grounds a foreign corporation were subject to the operation of the insolvent law, publication of notice should have the same effect upon it as upon other creditors in making it a party to the proceedings. But we do not suppose that it would be suggested that a natural person, a creditor who was a citizen of another State, lost his immunity and became a party to the proceedings merely by his accidental presence in the Commonwealth at the moment when the notice appeared. *Olivieri* v. *Atkinson,* 168 Mass. 28. No greater direct effect than the actual presence of a natural person can be attributed to the presence of an attorney authorized to receive service of process. Furthermore, we doubt whether the

act of 1884 purports to give the appointment even so much effect as that. The language discloses no thought about insolvent proceedings, and when at a later date it was decided to make foreign corporations subject to be put into insolvency here, it was thought proper to provide expressly that service upon the commissioner of corporations should be a sufficient notice to the corporation of the presentment of the petition by creditors against it. St. 1890, c. 321, § 1. If the act of 1884 attempted to do more than we have construed it to attempt, its validity might be drawn in doubt as requiring the corporation to surrender a privilege secured to it by the Constitution and laws of the United States. *Southern Pacific Co.* v. *Denton*, 146 U. S. 202, 207.

The independent ground on which it is urged that the plaintiff is subject to the insolvent law in the present case is that the plaintiff is domesticated in this State, as shown by the facts above recited, of which the appointment of an attorney is only one. The word " domesticated," which was used in the argument for the defendant, presents no definite legal conception which has any bearing upon the case. We presume that it was intended to convey in a conciliatory form the notion that the plaintiff was domiciled here, — " resident," in the language of Pub. Sts. c. 157, § 81, — and therefore barred by the language and legal operation of the act. It could not be contended that the corporation was a citizen of Massachusetts. In such sense as it is a citizen of any State, it is a citizen of the State which creates it and of no other. But there are even greater objections to a double domicil than there are to double citizenship. Under the law as it has been, a man might find himself owing a double allegiance without any choice of his own. But domicil, at least for any given purpose, is single by its essence. Dicey, Confl. of Laws, 95. A corporation does not differ from a natural person in this respect. If any person, natural or artificial, as a result of choice or on technical grounds of birth or creation, has a domicil in one place, it cannot have one elsewhere, because what the law means by domicil is the one technically pre-eminent headquarters, which, as a result either of fact or of fiction, every person is compelled to have in order that by aid of it certain rights and duties which have been attached to it by the law may be determined. It is

settled that a corporation has its domicil in the jurisdiction of the State which created it, and as a consequence that it has not a domicil anywhere else. *Boston Investment Co.* v. *Boston,* 158 Mass. 461, 462, 463. *Shaw* v. *Quincy Mining Co.* 145 U. S. 444, 450. *Martine* v. *International Ins. Co.* 53 N. Y. 339, 346. The so called modifications of this rule by statutes like the act of 1884 do not modify it because jurisdiction of the ordinary personal actions does not depend upon domicil, but only upon such presence within the jurisdiction as to make service possible. See *In re Hohorst,* 150 U. S. 653. But the operation of our insolvent law by its very terms may, and in this case does, depend upon the domicil of the creditor, and as there can be no doubt either in fact or in law that the plaintiff was domiciled in Pennsylvania in such a sense that a statute like Pub. Sts. c. 157, § 81, would hit it there, it cannot have been domiciled here for the same purpose at the same time.

*Judgment for the plaintiff affirmed.*

FIELD, C. J.   The defendant, who is and was a citizen of Massachusetts, filed a voluntary petition in insolvency in the Court of Insolvency for the county of Suffolk, on which he was adjudged an insolvent debtor, and, due proceedings being had, he received his discharge. The plaintiff is a corporation organized under the laws of Pennsylvania; its principal offices are in Philadelphia, and it manufactures and sells malt liquors. It has complied with the statutes of this Commonwealth regulating foreign corporations having a usual place of business in the Commonwealth, and it has an office and store-room in Boston, which it hires in its own name, where it sells its products at wholesale. It hires an agent, styled a manager, a bookkeeper, and delivery men for the conduct of its business in Boston, and it owns there a complete set of office furniture and horses and wagons sufficient for the delivery of the goods which it sells in Boston. All these employees reside in this Commonwealth. It received from the board of police of the city of Boston a license in its name, of the fourth class, to sell intoxicating liquors in that city as a wholesale dealer.

The defendant ordered of the plaintiff, at its office in Boston, beer and ale, which were delivered to him in Boston from the

plaintiff's store-room there, and some time after this purchase was made and the goods delivered the defendant filed his petition in insolvency.   The plaintiff did not prove its claim in the proceedings in insolvency, and now contends in this action that the discharge is not a bar, because it is a citizen of the State of Pennsylvania.

There is no doubt that the words of the statutes relating to discharges in insolvency, as well as the words of the discharge itself, purport to make the discharge pleaded in the present action a bar to the action.   Section 81 of the Pub. Sts. c. 157, provides that the debtor upon obtaining his discharge shall be absolutely discharged from all provable debts founded " on any contract made by him subsequently to the last day of July in the year eighteen hundred and thirty-eight, and while an inhabitant of this State, if made within this State, to be performed within the same, or due to any person resident therein at the time of the first publication of the notice of the issuing of the warrant."   The contract sued on was made while the defendant was an inhabitant of this State, and was made within the State to be performed within the State, and on the part of the plaintiff was performed within the State ; and therefore it is exactly within the terms of the statutes.   Whether or not the debt is due to a person resident within this State at the time of the first publication of the notice may depend upon the question whether the plaintiff corporation had a domicil within the State.

If our statutes relating to insolvency are constitutional and valid statutes, the courts of this State must enforce them.   If they are in violation of the Constitution of the United States, in its application to the case, to that extent they are void.   Whatever may be the rule of comity adopted by other courts in enforcing our statutes, the courts of Massachusetts must enforce the statutes of Massachusetts according to their meaning, if they are constitutional and valid statutes.

There is no contention that our statutes relating to insolvency are in violation of the Constitution of Massachusetts.   The contention is that, in their application to creditors who are citizens of other States than Massachusetts, they are in violation of the Constitution of the United States.   Whether the courts of other

States than Massachusetts, or the courts of the United States, will enforce these statutes in suits brought before them is for such courts to determine. The decisions of the Supreme Court of the United States upon questions of comity, although entitled to the highest respect, are not conclusive upon us. The decisions of that court upon the meaning of the Constitution of the United States are conclusive. The real difficulty is in determining the principle on which the Supreme Court of the United States has decided that a discharge granted under a State insolvency law enacted before the contract sued on was entered into, will not discharge a debt due under the contract, if due to a citizen of another State than that in which the law was passed.

This difficulty has often been noticed. In *Marsh* v. *Putnam*, 3 Gray, 551, Mr. Justice Thomas, speaking for this court, in carefully reviewing the decisions of the Supreme Court of the United States up to the time of the decision, says : " When, after the most mature consideration, it has been settled by the appropriate tribunal, first, that the power given to Congress to pass bankrupt laws is not exclusive, and that, when Congress does not exercise the power, the States may; and secondly, that the fair and ordinary exercise of that power, by a State law which operates only upon contracts to be made after the law takes effect, does not, within the meaning of the Constitution of the United States, impair the obligation of contracts, I have never been able to see any conflict between our insolvent acts, taken in their full force, and any provision of the Constitution of the United States. So far, however, as the question has been settled by the decisions of the Supreme Court of the United States, our judgment is concluded." He also says: " In this state of the opinions of that tribunal to which, on these subjects, we look for guidance, we know of no safe rule but *stare decisis*, and yet not go beyond the precise limits of the decisions." See *Phœnix National Bank* v. *Batcheller*, 151 Mass. 589.

The principal decisions of the Supreme Court of the United States on this subject, since those considered in *Marsh* v. *Putnam*, are *Baldwin* v. *Hale*, 1 Wall. 223 ; *Baldwin* v. *Bank of Newbury*, 1 Wall. 234 ; *Gilman* v. *Lockwood*, 4 Wall. 409 ; and *Denny* v. *Bennett*, 128 U. S. 489.

*Baldwin* v. *Hale* was a suit brought in the Circuit Court of

the United States for the District of Massachusetts. The plaintiff was a citizen of Vermont, and the defendant a citizen of Massachusetts. The suit was upon a promissory note given by the defendant to the plaintiff, dated in Boston and payable in Boston. The conclusion of the opinion is as follows: " Insolvent laws of one State cannot discharge the contracts of citizens of other States, because they have no extraterritorial operation, and consequently the tribunal sitting under them, unless in cases where a citizen of such other State voluntarily becomes a party to the proceeding, has no jurisdiction in the case. Legal notice cannot be given, and consequently there can be no obligation to appear, and of course there can be no legal default." *Baldwin* v. *Bank of Newbury*, 1 Wall. 234, in this respect simply follows *Baldwin* v. *Hale.* Since the decision in *Baldwin* v. *Hale*, this court has followed it when the facts were the same or similar. *Kelley* v. *Drury*, 9 Allen, 27.

*Gilman* v. *Lockwood* was a suit brought in the Circuit Court of the United States for the District of Wisconsin. The conclusion of the opinion is as follows: " State legislatures may pass insolvent laws, provided there be no act of Congress establishing a uniform system of bankruptcy conflicting with their provisions, and provided that the law itself be so framed that it does not impair the obligation of contracts. Certificates of discharge, however, granted under such a law, cannot be pleaded in bar of an action brought by a citizen of another State in the courts of the United States, or of any other State than that where the discharge was obtained, unless it appear that the plaintiff proved his debt against the defendant's estate in insolvency, or in some manner became a party to the proceedings. Insolvent laws of one State cannot discharge the contracts of citizens of other States; because such laws have no extraterritorial operation, and consequently the tribunal sitting under them, unless in cases where a citizen of such other State voluntarily becomes a party to the proceedings, has no jurisdiction of the case."

In *Denny* v. *Bennett*, 128 U. S. 489, 497, the opinion in *Gilman* v. *Lockwood* is quoted, and it is said to be a clear and accurate statement of the doctrine of the preceding cases. The court there say: " Any one who will take the trouble to examine all

these cases will perceive that the objection to the extraterritorial operation of a State insolvent law is, that it cannot, like the bankrupt law passed by Congress under its constitutional grant of power, release all debtors from the obligation of the debt. The authority to deal with the property of the debtor within the State, so far as it does not impair the obligation of contracts, is conceded, but the power to release him, which is one of the usual elements of all bankrupt laws, does not belong to the legislature where the creditor is not within the control of the court." This last proposition, which is also suggested in the opinions in *Baldwin* v. *Hale* and *Gilman* v. *Lockwood*, seems to me somewhat different from any constitutional doctrine relied upon by Mr. Justice Johnson in his final opinion in *Ogden* v. *Saunders*, 12 Wheat. 213, 358.

In *Stoddard* v. *Harrington*, 100 Mass. 87, decided in 1868, after the decision of the Supreme Court of the United States in *Gilman* v. *Lockwood*, this court held that, if a contract is made between two citizens of this State, within the State, and one of them afterwards removes therefrom and becomes a citizen of another State, and the other then obtains in this State, where he continues to reside, a discharge under the insolvent laws which were in force when the contract was made, the discharge is a bar to an action against him on the contract.   The court say : " Regret has been frequently expressed by judges of the courts of the United States, as well as by those of the several States, that with all the learning and ability which have been bestowed upon the discussion it has not been found practicable to place the decisions on this important subject upon some clear and intelligible basis of principle.   But the reasons given by different judges for coming to the same conclusions have been so diverse, and the grounds assigned for judgments not certainly repugnant to each other have been sometimes so apparently inconsistent, that it is difficult to do more than follow adjudged cases in their liberal application, without attempting to gather from them a rule which affords a sure solution of new questions."   The court also say : " The suggestion that the power of a State over the contracts of its citizens is limited by the power to make them parties to the proceedings in insolvency, does not seem to us well founded, because we think that the effect of the insolvent law

qualifies the contract from its inception; and the question of the sufficiency of the notice to creditors to make them so far parties as to be bound by these proceedings does not seem to be one over which the courts of the United States have any peculiar jurisdiction." This decision has not been overruled by this court, and the precise case does not seem to have come before the Supreme Court of the United States. See *Pullen* v. *Hillman*, 84 Maine, 129.

The doctrine that the statutes of a State, *ex proprio vigore*, have no extraterritorial force is a doctrine of the common law, and not a provision of the Constitution of the United States. The decision in *Ogden* v. *Saunders* was made forty years before the adoption of the Fourteenth Amendment of the Constitution of the United States, and was not put upon the principle declared in *Pennoyer* v. *Neff*, 95 U. S. 714. A discharge under the bankruptcy laws of England is held in the courts of England to be a discharge of debts due to citizens or subjects of other countries, without any regard to the question whether the courts of England have any jurisdiction over the foreign creditors whereby they could render personal judgments against them. See Dicey, Confl. Laws, 448 *et seq.*; *Ellis* v. *M'Henry*, L. R. 6 C. P. 228. It is probable that a discharge under the bankruptcy laws of the United States which purported to discharge the debtor from all debts provable against his estate would be held a bar to an action in the courts of this country by a non-resident alien on a debt due him which could have been proved against the estate. Bump, Bankruptcy, (11th ed.) 713.

Without considering whether this court in any event would follow the decision of the Supreme Court of the United States in *Barrow Steamship Co.* v. *Kane*, 170 U. S. 100, it appears that the plaintiff corporation had appointed the commissioner of corporations to be its true and lawful attorney, upon whom all legal processes in any action or proceeding against it might have been served, pursuant to St. 1884, c. 330, and the amendments thereof, so that a personal judgment at the time of the institution of the proceedings in insolvency could have been rendered against it in the courts of Massachusetts which would be recognized as valid everywhere, and it also could have become or been made an insolvent debtor under our statutes relating to insolvency. St. 1890, c. 321.

It is true that a corporation established by the laws of a State of the United States is, for the purpose of the jurisdiction of the courts of the United States, regarded as a citizen of the State by whose laws it was created, although it is not a citizen within the meaning of the clause in the Constitution of the United States which provides that the citizens of each State shall be entitled to all the privileges and immunities of the citizens of the several States. I am unable to see that the question discussed depends upon the citizenship of the parties, in any proper sense of the word citizenship. It may be that it depends upon inhabitancy or domicil. I am unable to believe that the Supreme Court of the United States would hold that the insolvent laws of Massachusetts did not apply to contracts made after the passage of the laws in Massachusetts between a citizen of Massachusetts and a subject of Great Britain domiciled in Massachusetts at the time. See *Olivieri* v. *Atkinson*, 168 Mass. 28. The Fourteenth Amendment of the Constitution of the United States now defines who are citizens of the United States and of the States. Whether a corporation can have a domicil other than that in the State under whose laws it was incorporated is undoubtedly a question of some difficulty, but I think the better opinion is that it can. *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148, 153. *Ricker* v. *American Loan & Trust Co.* 140 Mass. 346, 350. *Garham* v. *Mutual Aid Society*, 161 Mass. 357, 366. Many corporations are organized by citizens or inhabitants of Massachusetts under the laws of other States, for the sole purpose of doing business in Massachusetts, and they have a place or places of business only in Massachusetts ; and to hold that contracts made by them in Massachusetts with the inhabitants of Massachusetts, since the passage of our insolvent laws, are not subject to be discharged under those laws, seems to me unwarrantable, particularly when the corporations bring their suits in the courts of Massachusetts. If the operation of the insolvent laws of Massachusetts upon contracts made here between persons domiciled here can be avoided upon the ground that they were made in behalf of corporations organized under the laws of other States, although having usual places of business here and subject to be sued here, then it will be possible for foreign corporations to

obtain substantially all the business advantages in Massachusetts conferred by our laws without subjecting themselves to the liability of having debts due to them and contracted within the Commonwealth discharged by proceedings in insolvency on the part of inhabitants of the Commonwealth with whom the contracts were made.  I know of no decision of the Supreme Court of the United States upon exactly the state of facts appearing in the present case, and on principle I do not see why the contract made and performed here by the parties in this case is not subject to be discharged in accordance with the laws of Massachusetts in force when the contract was made.  The contract undoubtedly is to be governed generally by the laws of Massachusetts, and the plaintiff has elected to bring its suit in a Massachusetts court, and the plaintiff is not only subject to be sued in Massachusetts, but may be made an insolvent debtor under the insolvency statutes of Massachusetts.  St. 1890, c. 321.  To enforce our insolvency statutes in the case of such a contract entered into here between such parties, after the insolvency statutes were passed, does not seem to me to give the statutes any extraterritorial force, and the plaintiff corporation seems to me, in reference to contracts made here with citizens or inhabitants of Massachusetts, to be subject to our laws.  I am not aware that any one has pointed out the particular provisions of the Constitution of the United States which our insolvency statutes would violate if it were held by the courts of Massachusetts that the discharge pleaded in the present action was a bar to the action.  The early decisions of the Supreme Court of the United States were only to the effect that contracts entered into before the passage of the insolvency statutes of a State, or entered into in another State than that in which such statutes had been passed but to which the contracts were not subject, could not be discharged under the statutes, because under the Constitution of the United States no State could pass a "law impairing the obligations of contracts."  But this seems inapplicable to contracts entered into within a State, subject to the laws thereof, when insolvency statutes are in existence within the State, and are a part of the laws to which the contracts are subject.

It is evident that in recent years this court, in its anxiety to

do nothing which might seem to be in violation of the Constitution of the United States according to the later decisions of the Supreme Court of the United States, has rendered decisions which go far in the direction of the decision of the court in the present case.    *Guernsey* v. *Wood*, 130 Mass. 503.    *Phœnix National Bank* v. *Batcheller*, 151 Mass. 589.    *Regina Flour Mill Co.* v. *Holmes*, 156 Mass. 11.    In *Guernsey* v. *Wood* the plaintiff was not a corporation, but a citizen of Pennsylvania, never resident in Massachusetts.    In *Phœnix National Bank* v. *Batcheller* it does not appear that the plaintiff corporation had any usual place of business in Massachusetts, or had complied with our statutes regulating foreign corporations doing business here, or was subject to legal process here.    The same is true of *Regina Flour Mill Co.* v. *Holmes*, 156 Mass. 11.    In none of these cases was there anything in the nature of the license shown in the present case.    These distinctions seem to me important. Whether such a license could lawfully be granted to a foreign corporation is a question which has not been argued, but, if the license was void, the liquors were sold in violation of law, and the plaintiff cannot maintain its action.    Certainly it is going beyond the " precise limits " of the decisions of the Supreme Court of the United States, if it is held that the discharge pleaded in the present suit is invalid.

I think that this court ought to uphold the validity of the discharge, in the present case, until the Supreme Court of the United States has decided to the contrary.

The question, of course, becomes of little importance when there are bankruptcy laws of the United States in force; but such laws have been in force only for short periods of time, and the insolvency laws of Massachusetts are not repealed, but only suspended, by the bankruptcy laws of the United States.