[No. 6088.]

THE NEW YORK LIFE INSURANCE COMPANY v. PIKE.

1. CORPORATIONS—*Residence*—A corporation organized under the laws of one state and doing business in another, by virtue of compliance with its laws, is not a resident of the latter state. —(243).

2. VENUE—*Change of Venue*—A corporation organized under the laws of New York was conducting business in Colorado, maintaining its principal office in the City of Denver. In an action instituted in another county, the process in which was served in Denver, it applied for a change of venue to the county of Denver, on the ground that its residence was in that county. *Held*, that under Rev. Code, Sec. 29, the motion was properly denied—(242-244).

3. LIFE INSURANCE—*Conditions*—A condition in an application for life insurance that the insurance shall not take effect unless the policy is delivered to the insured while he is in life and good health, is a valid condition—(244).

4. ——*Delivery of Policy*—A policy of life insurance may be delivered, in point of law, though it never comes to the hands of the insured.

Defendant was a life insurance company of the State of New York doing business in Colorado, with its principal office, in this state, in Denver. It was its custom to accept for the first premium, the promissory note of the applicant for insurance, and to deliver the policy without reference to the maturity or payment of the note, and to look to the local solicitor of the company for the payment of the first year's premium. Cartee, being informed of this custom applied for insurance upon his life, executing a promissory note, payable to the local solicitor, in three installments for the first year's premium. Cartee was a resident of Victor in Teller county. The local solicitor conforming to the rules of the company, transmitted the application with the note, to the Denver office. Thence the application was sent to the home office, and a policy, naming the wife of the applicant as beneficiary was issued thereon and sent to the

Denver office, without instructions. So far all that was done was in conformity with the custom in like cases theretofore. But in this instance, the local solicitor being delinquent, the policy was detained in the Denver office for some days, and was then sent to a bank at Victor with instructions to return it if the first installment of the note should not be paid when due. Cartee died before the first installment of the premium matured. Up to the time of his mortal illness he had been in good health. The policy was then returned to the Denver office, and was never in fact delivered, nor ever came to the hands of the insured or the beneficiary. Held that in view of the invariable custom under which the company had conducted its business theretofore, that this custom was brought to the attention of Cartee, that his application was made with reference to it, that the application contained no provision that any premium must be paid before the policy took effect, or that the policy must actually come to the hands of the insured in his lifetime, the policy was, in contemplation of law, delivered when it was mailed from the home office of the company, that the agent at Denver received it charged with the duty to deliver it to the insured, that the contract was then complete, and the act of the agent in Denver in detaining it was without effect to impair it—(240, 244, 249).

The right of the beneficiary rested upon contract and not upon any estopped—(250).

*Held further,* that the return to the beneficiary of the premium note, with an endorsement, contrary to the fact, that the application had never been accepted without effect—(246).

5. ——*Amount of Premium*—The local solicitor is the agent of the insurer to fix the amount of the premium. His action binds the company—(250).

*Appeal from Teller District Court*—Hon. Louis W. Cunningham, Judge.

Mr. Charles W. Waterman, Mr. William A. Jackson and Mr. James H. McIntosh for appellant|

Mr. J. E. Ferguson for appellee.

Mr. Justice Musser delivered the opinion of the Court:

On September 24, 1904, a Mrs. Brown, the local solicitor of the appellant insurance company at Victor, in Teller County, solicited one John R. Cartee to take out a policy of life insurance. Mr. Cartee was averse

to doing so, stating, as a reason, that he did not have the money with which to pay the premium. Mrs. Brown informed him that he could give his note for the first annual premium, as the company sometimes did business that way. Mr. Cartee said that if he could do that, he would take out a policy, whereupon the usual application was made out and signed by Mr. Cartee for a $2,000 policy, and he also signed and delivered to Mrs. Brown a note for the first annual premium, payable to her order in three installments, to-wit: $25.00 on November 10th, and $25.00 on December 10th, 1904, and $51.94 on January 10th, 1905. Mrs. Brown, as the rules of the company required, sent the application and note to the state branch office of the company at Denver. A memorandum was made of the note on the policy register at the Denver office, and the application was forwarded to the home office in New York. The note was retained at Denver. On this application, the company issued a policy, in which the wife of the insured was named as beneficiary, who is now Ida Pike and the appellee here. The policy was sent from New York to the Denver office with no instructions. Thus far the matter had been carried on precisely as had been the custom in like cases theretofore, wherein Mrs. Brown, who had been soliciting insurance for the company for several months, had thus taken notes for premiums. In every such instance before this one, when the Denver office received the policy, it was forwarded to Mrs. Brown and she would put it into the hands of the insured. The company held her responsible for the first premium. Thus the business was carried on with the full knowledge and consent of the office at Denver, and, as appears from the testimony of the cashier of the Denver office, with the knowledge and consent of the company at New York, for the cashier testified that Mrs. Brown was behind in the payment of premiums on outstanding policies, and the company had instructed him to hold Mrs.

Brown's new business until she paid up her overdue premiums. This was, the cashier said, "as a sort of penalty, you might call it, in order to induce the agent to promptly pay up overdue business." In this instance, instead of doing as was customary, the cashier, in order to hold up her new business and penalize Mrs. Brown for her delinquencies in not paying up for some outstanding policies, and as she expressed it in her testimony, "to attack my commissions," held this policy for some time at Denver, and after its receipt and about October 14th, the cashier, retaining the policy, sent the note to Mrs. Brown for collection and remittance, though, by its terms, none of the installments were due. On October 22nd, the cashier sent the policy with another to a bank at Victor, with the following reference thereto in a letter enclosed with it:

"I also enclose policy No. 2,215,747 Cartee, $2000, total premium $102.26. The agent has the note which is dated September 24th due Nov. 10th, $25.00, Dec. 10th, $25.00 and Jan. 10th, $51.94. I have written the agent to return the note to me so that I can send it to you for collection. The discrepancy between the amount of the note and the total premium is an error on the part of the agent. Kindly try to collect this difference with the last installment of the note. I have noted the address of these two parties on the face of the policies.

In the event the first installments in the two cases are not paid when due, I will thank you to return the policies and notes to this office.

Kindly acknowledge receipt of these enclosures.

Yours truly,

W. A. WOOD,
Cashier."

He also sent a copy of the letter to Mrs. Brown and asked her to return the note to him, which she did not do. After receiving the information that the

policy was sent to the bank, Mrs. Brown tried to find Mr. Cartee to inform him that the policy was at the bank, and to have him make arrangements to pay the note. She learned that he was out of town. He returned on the 30th of October, in apparently good health, having been absent since October 5th, and died on the 31st. Mrs. Cartee offered to pay Mrs. Brown the first instalment of the note when due on November 10th, and again on December 10th when the next instalment became due, but Mrs. Brown would not accept the money. After the death of Mr. Cartee, Mrs. Brown sent the note to the Denver office, and on November 2d, it was sent by the cashier to the home office of the company in New York. The Victor bank returned the policy to the Denver office. Afterwards, the note was again sent to Mrs. Brown, who was instructed to call upon an attorney, and, upon his dictation, indorsed thereon the following:

"The application for insurance in connection with which this note was taken not having been accepted, the consideration for this note has failed and the note is returned for cancellation.

MRS. I. BROWN."

The note was left with the attorney, and on February 5th was returned so indorsed to Mrs. Cartee. This was after she had begun an action for the insurance, which action was dismissed, and this action brought in the district court of Teller county to recover on the policy. From a judgment in her favor, the company has appealed to this court.

In due time, the company filed a motion for a change of venue from the district court of Teller county to the district court of the city and county of Denver, for the alleged reason that the defendant was a resident of the city and county of Denver, having its principal place of business there, and that the summons was served there, and, in support of the motion,

filed an affidavit of the director of the agency at Denver, in which it was stated that the company was a corporation organized under the laws of the state of New York, for the purpose of carrying on the life insurance business, and, as such, was authorized by reason of a full compliance with the laws of the state of Colorado to carry on its business in this state, and for that purpose had its principal office and place of business in the city and county of Denver, and was a resident, for the purpose of carrying on its business, in said county, and that the summons was served upon the agent in the city of Denver. The question of the sufficiency of the affidavit, because it fails to negative certain facts, the existence of which would confer jurisdiction on the district court of Teller county, is left out of view.

Section 29, Rev. Code, relating to the place of trial of actions, among other things, provides:

"Or if the defendant be a non-resident of this state, the same (the action) may be tried in any county in which the defendant may be found in this state or in the county designated in the complaint."

The authorities, both court and text writers, announce, as settled doctrine, that a corporation organized under the laws of one state is a resident of the state under whose laws it was created; that it can not be a resident of any other state, and, though such a corporation be permitted by another state, upon compliance with its laws, to carry on its business there, such permission and compliance does not make it a resident of such other state.—*Cook v. Hager*, 3 Colo. 386; *Shaw v. Quincy M. C.*, 145 U. S. 444; *Boston I. Co. v. Boston*, 158 Mass. 461; *Ber, etc., Co. v. Dreyfus*, 172 Mass. 154; *Merrick v. Van Santvoord*, 34 N. Y. 208; *Boyer v. N. P. Ry. Co.*, 8 Idaho 74; 1 Thompson on Cor. (2d ed.) § 490 *et seq.*; 1 Cook on Cor. (6th ed.) § 1; 1 Clark & Marshall Private Cor. § 114.

It follows that this defendant was a resident of the state of New York, in which it was created, and a non-resident of the state of Colorado, within the meaning of the language quoted above from sec. 29 of the Code. This being so, the action was triable in the county designated in the complaint, and the motion for a change of venue was properly overruled. To hold otherwise would be to engraft upon the statute an exception, which is wholly foreign to its plain terms, and would be only an amendment thereof.

In the application signed by Mr. Cartee, there was a provision that the insurance thereby applied for should not take effect unless the policy was delivered to him during his lifetime and good health. The company now asserts that, "the agreement of the parties that the insurance should not take effect unless the policy was delivered to Cartee during his lifetime and good health was an agreement they had a right to make, and which the court ought to respect." In this assertion, the company is right. The principal contention of the company is, that the policy was not delivered in the lifetime of the insured. The record discloses that the insured remained in good health until the time of his death. The question, therefore, is, was or was not the policy delivered, in contemplation of law, to the insured during his lifetime? If it was, the judgment is right. If it was not, the judgment is wrong. The application did not provide that the policy must be actually received by or given into the hands of the insured in his lifetime, nor did it provide that any premium had to be actually paid before the policy was in effect. Theretofore, policies, in like cases, had been actually put into the hands of the insured by the local solicitor without reference to the payment of the first premium, other than at the time specified in the notes given by the insured. This was fully understood, and in fact brought about by the local

solicitor and the state agent of the company.  It also appears that the company at New York, not only knew that notes were being taken for first premiums, but actually authorized the taking thereof, for the cashier testified that it was a rule of the company that all notes taken for premiums had to be sent to the Denver office, with the applications, and a record thereof made in the books.

The case of *Kimbro v. The N. Y. Life Ins. Co.*, 134 Iowa 84, is almost identical with the case at bar, so far as the notes are concerned.   In that case, there was a dispute as to whether the defendant's agents were authorized to accept notes for premiums.   In this case, there is no doubt on that question, for the rule of the company was, that notes taken should be forwarded to the Denver agency with the application. There, as here, the notes were sent by the solicitor to the superior officer or agent to whom he was immediately responsible. There, as here, the notes were made payable to the local solicitor.   There, as here, the company continued to hold these notes until it discovered that payment for loss was impending, when the notes were returned to the local solicitor for indorsement, and were indorsed in words of substantially the same import as the indorsement upon the note in the present case.   There, as here, the agent was held responsible for the premiums represented by the notes, though in the Iowa case, it appears that the local agents would charge themselves in their agency accounts.   Whether Mrs. Brown charged herself or not, in this case, the record does not disclose, but both Mrs. Brown and the cashier testified that she was responsible for the premiums, and the home office held her responsible for them when overdue.   The Iowa court held that the facts in that case were evidence that the notes were authorized by the company, and said:

"Such a transaction is a payment of the premium as between the assured and the company. The giving of the note instead of cash in advance by the applicant will not invalidate the insurance, if the contract be otherwise complete."

The facts in this case are stronger in support of such a conclusion than in the Iowa case. Here it was with the direct authorization of the company that the note was taken, and the invariable custom, when such notes were taken and the applications accepted, to issue the policies, send them to the insured, through Mrs. Brown, and look to her for the premium. When the notes became overdue, they did not look to or worry the policy holders, if they could have done such a thing, but looked to Mrs. Brown for payment, and endeavored to collect from here. At the same time, she was permitted to continue in the same way to induce persons to make applications for insurance and sign notes for the first premiums, and the company, notwithstanding the non-payment of past premiums for outstanding policies, would accept these new applications and mail policies for Mrs. Brown to put into the hands of the insured.

The circumstances under which the indorsement was made under the instructions of the company itself. was made under the instruction of the company itself. That indorsement does not say that the consideration for the note failed, because the policy was not delivered, nor that it was cancelled because the policy was not delivered, but the indorsement says that the consideration for the note failed because the application was not accepted. This record, however, shows that the application was accepted. The policy was issued and sent to Denver in the usual course, when it was diverted from that course and sent to a bank, not because the application had not been accepted, but because Mrs. Brown was behind in the payment of other premiums. If the consideration for the note failed, for the reason

alleged in the indorsement, it had failed before the policy was sent to Denver, and the Denver office was guilty of trying to collect the premium on an application that had been rejected.   The New York office, instead of notifying the Denver office that the application had not been accepted, sent the policy in the usual way without instructions.   The reason given in the indorsement for the cancellation of the note did not exist, and the consideration for which it was alleged the note was given did not fail.

In *Godfrey v. The N. Y. Life Ins. Co.,* 70 Minn. 224, Godfrey made an application to one of defendant's agents for life insurance, and delivered to the agent her promissory note for the amount of the first premium, - payable to the agent.   The agent never accounted to the company for the note, but transferred it to Sanford, who was a good faith purchaser for value.   The policy, though prepared and executed by the company, was afterwards abandoned by both parties, and Godfrey, who had to pay the note to Sanford, brought suit against the insurance company to recover the amount of the note. It did not appear in that case as directly as in this case that the agent had authority to accept the note. The local agent, however, had been in the habit of taking such notes and discounting them at a certain bank. This was known to the general agent of the company, and it was held, that under the circumstances, notwithstanding written instructions to the contrary, the insurance company was bound by the act of the agent in accepting the note, and a judgment for the plaintiff, against the company, for the amount of the note, was affirmed.

In *Kilborn v. Prudential Ins. Co.,* 99 Minn. 176, an application was made to a local solicitor for insurance on December 19, 1904, and, at the same time, the applicant executed and delivered to the solicitor two promissory notes for the first premium, payable to the

solicitor, one in one month and the other in six months from date. The application was sent to the state agency in Minneapolis and at once forwarded to the home office in New Jersey. On December 23, 1904, the company executed a policy and mailed it to the state agency at Minneapolis for delivery to the insured. The state agency received it on December 26th. On December 24th, the insured died. On December 26th, the state agency learned of his death and returned the policy to New Jersey. On the same day, the solicitor delivered the two notes to the state agency, who, until then, had no knowledge of their execution. They marked the notes void and cancelled, and forwarded them on January 12th to the plaintiff. No attempt was made to collect the notes, and nothing was ever paid on them. The court said the only serious question in the case was whether the premium was paid by the delivery of the notes in question. The application, which was forwarded to the company, stated that $61.32 had been paid in advance on account. The question was, whether the giving of the notes constituted a payment in advance on account, as stated in the application. The authority of the agent to take the notes was not as clear as in this case. The court said that if the delivery of the promissory notes to the agent constituted payment of the first premium, the policy was in force when the insured died, and the plaintiff was entitled to recover. In that case, most of the opinion is devoted to a discussion of the authority of the local solicitor to take the notes. There was no such direct authority as in this case. After a lengthy discussion, the court concluded that the local agent had authority to take the notes, and that, therefore, they constituted payment of the first premium. The lower court had found that the first annual premium had not been paid; that the policy was never delivered, and rendered judgment for the defendant company. The Supreme Court reversed this, and directed judgment for plaintiff on the stipulated facts.

It follows from these authorities that the first year's premium was paid by the note given by Mr. Cartee. Under these circumstances, the mailing of the policy by the company, in the usual course, constituted a delivery thereof.—*Kilborn v. Prudential Ins. Co., supro; N. Y. Life Ins. Co. v. Babcock,* 104 Ga. 67; *Kimbro v. N. Y. Life Ins. Co., supra.*

The cashier at Denver, by sending the note to a bank, with instructions that implied payment before delivery, could not affect the contract already made. The contract was complete when the application was accepted and the acceptance signified by mailing the policy. *Kilborn v. Prudential Ins. Co., supra.* The act of the company in transmitting the policy must be construed in the light of the manner in which the company did business before in like cases. Mr. Cartee was induced to sign the application and make and deliver his note by being told, by the agent, that the company did business that way, and he certainly proposed to do business with the company as the company was accustomed to do business, in like cases. The agent at Denver received the policy, charged with the duty of transmitting it to the local solicitor to be put into the hands of the insured, for in that way the business had been done in every instance before. It was out of the power of any agent of the company, or even of the company itself, without the consent of the insured, to change a contract once made, and impose upon it new conditions. It certainly would be unjust for the insured to suffer because of a scramble between the company and the soliciting agent to get first hands on the premium. There was a difference of thirty-two cents between the amount of the note given and the premium mentioned in the policy. The cashier's letter to the bank shows that he was not very insistent about this. A difference between the notes and the premium existed in the case

of *Kilborn v. The Prudential Ins. Co., supra,* and the court dismissed it as follows:

"The fact that the face of the notes given to Knudtson (the local agent) amounted to slightly less than the sum due for the first premium is not important. It will be presumed that the difference was waived."

However, we prefer to put it on principle and say that the contract made between the company and Cartee fixed the first premium at the amount of the note. The amount of the premium was not mentioned in the application. The local solicitor had authority to state to the applicant the amount of the first premium. The applicant did not know what the amount was and could learn it only from the solicitor. She was the mouthpiece of the company to inform him. It was her duty to do this, and the company intrusted her with this duty. Her statement in that behalf was the statement of the company. The mind of the local agent, which for that purpose was the mind of the company, met the mind of Mr. Cartee in fixing the amount of the first premium at the amount specified in the note.

Something is said in the company's brief relative to a clause in the application, that anything paid in advance, on account of the premium, shall be binding on the company only, in accordance with the agent's or cashier's receipt therefor, on the company's authorized form. The authorized form of receipt was set out on the application. This form itself recited that it would not be valid if issued after June 30th, 1904. How this could apply to an application made in September, 1904, is incomprehensible. This clause is so manifestly a nullity that it forms no part of the application.

Something is also said relative to the question of estoppel, and that estoppel was not pleaded. As has been seen, the rights of the plaintiff do not rest at all upon estoppel. The rights of the plaintiff and the lia-

bility of the company rest entirely upon a plain contract in which estoppel plays no part.

As we are unable to discover any error against the company, the judgment is affirmed.

*Judgment affirmed.*

Decision *en banc.*

Mr. JUSTICE HILL not participating.

Decided July 3, A. D. 1911; rehearing denied October 2, A. D. 1911.