[No. 3371.]

MUTUAL LIFE INSURANCE CO. v. REID, administratrix.

1. INSURANCE—*Delivery of Policy.*. Applicant for life insurance executed a promissory note, payable to the soliciting agent, for one year's premium. The application was accepted and a policy issued and transmitted from the home office to the local office; by the local office it was delivered to the solicitor, who delivered it to the assured. The assured accepted it, giving a receipt for it, according to the forms used by the company, but immediately returned it to the solicitor, to be held by him as security for the note. The solicitor indorsed the note to the company and delivered it into the local office, where it was entered among Bills Receivable, and credited to the Collateral Account of the solicitor. All this was according to the business customs of the company. The assured died while the policy was still in the possession of the solicitor. The note was

never paid; nor was it ever returned or tendered to the assured or his representative. ·

Held that in law there was an effectual delivery of the policy, and that the company was liable thereon, though no express direction was ever given by the solicitor to charge it against his account. Rosenburg v. Johnson, 45 Colo. 53, distinguished.

Held further that the right of the plaintiff rested not upon the waiver of payment of the premium, but upon its actual payment, by acceptance of the note, and not upon any estoppel, but upon contract.

2. PLEADINGS—*Construction.*    In an action by administratrix upon a policy of insurance upon the life of her intestate, the complaint alleged that the deceased, at the time of applying for the insurance, executed and delivered to the soliciting agent his promissory note "for the full annual premium upon said policy." The replication contained an averment that the premium "was discharged" by the note. Held to import not a waiver of payment of the premium, but payment in fact.

*Appeal from Pueblo District Court.* Hon. C. S. Essex, Judge.

Messrs. Macbeth & May, and Mr. John F. Truesdell, for appellant.

Mr. John A. Martin, for appellee.

Cunningham, J.

Appellee recovered judgment in the district court of Pueblo county on a life insurance policy issued by appellant to appellee's decedent, Wayne R. Jacobs. The case was tried to the court without a jury. Aside from the formal testimony of the administratrix, given for the purpose of establishing her right to maintain the action, the whole case was submitted on depositions. Plaintiff rested her case upon the deposition of Mr. Homer A. Buckley, who was at the time the application of the said Jacobs was taken, a soliciting agent for appellant.

The whole transaction, so far as Jacobs was concerned, was had between the said Buckley and the said Jacobs, the latter never meeting any of the other representatives of the company. The defendant company rested its defense upon the depositions of Darby A. Day and E. R. Ferguson, its general agent and cashier, respectively, for the then territory of New Mexico. From the depositions we gather the following facts:

Buckley approached Jacobs for the purpose of inducing the latter to take out a policy with the defendant company. An application was written up and signed by Jacobs on July 24, 1903, and on the same date he gave his promissory note, payable to the said Buckley, in payment of a full year's premium. The application was forwarded to the head office of the company in New York City, where the same was accepted, and a policy issued and returned, reaching the New Mexico office on August 5th, where it was turned over to Buckley on August 11th. On September 9th, Buckley took the policy to Jacobs, who was located at a small town some distance from Albuquerque. Buckley testified that he delivered the policy to Jacobs, and that Jacobs approved it and signed a receipt for the same, and gave a written proxy to the company on the company's form. Buckley turned over the note, endorsed by himself, and the proxy, to the Albuquerque office. Jacobs, after receiving the policy from Buckley, immediately returned it to the latter, stating that he would call at the general office in Albuquerque in a very short time and make payment on his note. Not keeping his engagement in this respect, Buckley phoned him at Belen some days

later, and made arrangements with Jacobs to go to Belen and get an assignment of the latter's wages, on account of the note. Buckley, feeling safe, as he testified, about the matter, delayed going to Belen, and thereafter never attempted to get into communication with Jacobs. On September 26th, Jacobs was seized with a sudden and violent illness from which he died two days later, and while the policy was still in the hands of Buckley pursuant to the conditions or arrangements above detailed.

The controversy presented for our determination turns entirely upon whether the policy was in force at the time of Jacobs' death. Whether the policy was in force depends upon whether the assured had accepted and received the policy and paid the premium thereon, while he was yet in good health. We will permit the position of appellant to be stated by its general agent, Mr. Day, who gave the following testimony:

"It (meaning the policy) would have become effective only upon the payment of the premium of $56.73 (the first quarter) *or instruction from the agent to charge to his account the net premium due to the company thereon.* * * * If he, (Buckley) had delivered the policy *and instructed our office to charge the net premium to his account,* the transaction would have been completed and neither the payment of the note nor the death of the insured would have had any bearing on it. * * * If the policy had been delivered by Mr. Buckley, and *he had instructed us to charge the net premium to his account,* the failure of the insured to pay the note would have had no effect upon the policy, the agent having assumed the liability."

The italics are ours, and are used for the purpose of bringing out plainly the defense relied upon by appellant. In order that it may be shown beyond all question that the policy was in fact delivered by Buckley to Jacobs, and that the note was given by the latter to the former in payment of a full year's premium on the policy, we reproduce herewith Exhibit A, being the receipt which Buckley gave to Jacobs at the time the application was signed and the note executed and delivered to Buckley by Jacobs:

"Amount of Two Hundred thirteen and 92/100 dollars in settlement of policy of $2000 ten year endowment. Said note to be returned in case application is declined.          HOMER A. BUCKLEY."

Buckley testified that he recognized the above as a portion of the receipt, the date thereof having been detached. The receipt was written up by Buckley without using one of the company's forms, he being at the time of the transaction in the country without his supplies. That the application was not declined is shown by the fact that the company issued and forwarded the policy to the Albuquerque office, and the same was delivered thereafter by Buckley to Jacobs. Thereupon, the note became a valid and subsisting obligation from Jacobs to Buckley, had Buckley not endorsed the same and delivered it to the Albuquerque office. This transaction between Buckley and the office would not affect Jacobs' liability on the note in any way. At the time the policy was delivered by Buckley to Jacobs, to-wit, September 9th, Jacobs gave to Buckley the following receipt:

"RECEIVED AND ACCEPTED Policy No. 1372257 in the Mutual Life Insurance Co., of New York, for $2000 insurance on my own life.

I have paid the first premium on said policy, which I have examined and read, and which is in accordance with my application made to said company, and the same is hereby accepted.

Dated at Belen, N. M., on Sept. 9th, 1903.

WAYNE R. JACOBS."

This receipt was by Buckley turned over to the Albuquerque office. On the same date, September 9th, Buckley delivered to Jacobs a permit which reads as follows:

(Exhibit B.).

"Mining No. 1.

The Mutual Life Insurance Company of New York, Richard A. McCurdy, President, Nassau, Cedar and Liberty Streets.

Permission is hereby given Wayne R. Jacobs, insured by Policy Number 1372257, to act as Mining Engineer, but not to be personally engaged as a miner or in actual operation as an operator during the continuance of the contract.

W. J. EASTON, Secy."

New York, 24 July, 1903.

This permit appears to have been signed by the general secretary of the company. From the foregoing the following would appear to have been established by the evidence:

1. That the policy was issued and delivered to and accepted by Jacobs.

2. That he paid the full annual premium on the policy when he delivered his note to Buckley.

3. That after Buckley delivered the policy to Jacobs, and Jacobs handed the same back to him, he, Buckley, held it as pledgee for his own personal protection until payment was made on the note, and that Buckley was so holding the policy at the time of Jacobs' death, or until he delivered it to a Dr. Radcliffe, a feature of the transaction not necessary to explain.

The company permitted its soliciting agents to accept notes, payable to their order, in payment of the first annual premium. These notes the soliciting agents would endorse and deliver to the general state agent, at the same time instructing the state agent to charge the net sum due the company from such premiums to their, the soliciting agents', accounts. By this means a line of credit was extended by the company, or the state agency, to the solicitors in the field, and it, the company, was enabled to do a credit business, in fact, without appearing so to do, and to extend credit under conditions highly favorable to itself. The agents were, under this scheme, obliged to collect the notes they had taken, or lose their commissions, and in addition, remain liable to the company for the net premium. This plan enabled the agents to write much business which, on a cash basis, could not, probably, be secured. It was mutually advantageous to the agents and to the company, the former taking the maximum and the latter the minimum of risk. Mr. Day, the general agent of the company, testified that he had something like twenty agents under him in New Mexico, and that perhaps three-fourths of the business was transacted in this manner. From the foregoing it will be seen that the appellant's defense

narrows down to the single fact (aside from the matter of pleadings, to which we will later refer) that Buckley did not, in so many words, direct the cashier of the branch office at Albuquerque to charge him, Buckley, upon the books of the company with that portion of the premium which the company was entitled to receive. As has been seen, Buckley endorsed the note and turned it over to the company, and Mr. Ferguson, the cashier, testified that:

"said promissory note was entered in the bill book in the Albuquerque office which is a memorandum account. The face of the note was also credited to the collateral account of Homer A. Buckley, soliciting agent."

Therefore, we conclude,

4. That under the practice and custom of the company, Buckley was responsible to it for the payment of its portion of the Jacobs premium, and, as a matter of law, it was in a position to force Buckley to make settlement of the same. Having possession of the note endorsed by Buckley, the company was the equitable owner of the note, and was thus doubly secured.

Neither General Agent Day, or Cashier Ferguson, could explain on the trial what had become of the note. It was not tendered back, and the statements concerning its final disposition were highly unsatisfactory. Mr. Ferguson testified that:

"When I left the Albuquerque office in December, 1904, (more than a year after Jacobs' death) the note was in the safe in the company's office. Since that time a new safe has been purchased and the office moved. I do not know where the note is at the present time."

Neither was any explanation made as to the disposition of the proxy given to the company by Jacobs.

Carried to its logical conclusion, the position of the company in this case would be that if Buckley had collected the note in full, *but had given no instruction to the cashier of the branch office to charge his account with it,* that the policy would not be in force and effect, and would not be binding upon the company in case of the death of the assured; or again: if Buckley had negotiated the note before maturity, and refused to account to the company for the proceeds, the same result would follow. Under this view, the homely old rule that it takes two to make a bargain would not obtain. Everything would be made to depend upon the action or inaction of one individual—in this case upon Buckley— or if upon two, then upon Buckley and the cashier of the company. Jacobs, one of the contracting parties, supposedly, would not be considered, but the two agents of the company could alone make or consummate the contract. Jacobs could not be held responsible for any failure on the part of Buckley (if there was any failure) to deal properly with his company. Defendant is not in a position to complain of the conduct of Buckley, for, having delivered the policy to him and accepted the Jacobs note, endorsed, from him, they thereby authorized Buckley to deliver the policy. In point of law, the policy was delivered when the company, in the usual course, mailed it from the New York office. *New York Life Ins. Co. v. Pike* (Colo.), 117 Pac. 899. Therefore, it was the privilege of the company to charge Buckley with the net premium.

But that was a mere matter of bookkeeping. They did enter the note on their bill book, and charged Buckley's collateral account with the same. The case of *The New York Life Insurance Company v. Pike, supra,* is very similar to the case we are now considering, and supports our conclusions, although the facts involved in the Pike case were far less favorable to the assured than are the facts in the present case. The reports, and text books on insurance, are filled with cases wherein the questions of what constitutes a delivery of a policy, and what constitutes a payment of the premium are considered, yet, counsel, in their two briefs, call our attention to but two cases bearing on these subjects, neither of which are at all in point. In the case of *Daniels v. Fidelity Mutual Company,* 124 N. W. 675, cited by appellant, the opinion states that it was admitted that there had been neither payment by money or note, or delivery of the policy before death. The case of *Rosenburg v. Johnson,* 45 Colo. 53, simply holds that where an agent takes a note in his own name, in payment for a premium, and authorizes the company to hold him, and in fact pays the company the premium he, the agent, may enforce payment of the note. It was not necessary in the Rosenburg case to go further, since that case only involved a suit upon a promissory note.

Counsel for appellant vigorously, in brief and on oral argument, urge that plaintiff's case rests on the doctrine of waiver, that is, that the company had waived the payment of the premium, and had looked to Buckley instead of Jacobs for the same, and that waiver not having been plead by the plaintiff, the pleadings are insufficient to sustain the judg-

ment. Appellant is clearly right in its law, but entirely wrong as to its facts, since paragraph 5 of the complaint reads, in part, as follows:

"Plaintiff is informed and believes, and upon such information and belief alleges the fact to be that the said Wayne R. Jacobs, at the time of applying for said insurance, executed and delivered to one Homer A. Buckley, who was then and there the agent of the company at Albuquerque, New Mexico, his promissory note for $213.92, *for the full annual premium upon said policy.*"

We find no other allegation in the complaint that in any wise contradicts or qualifies that portion of paragraph 5 above quoted. The first paragraph of plaintiff's replication contains the following allegation:

"Plaintiff, replying to paragraph 3 of said answer, denies that demand was made for the payment of said premium, and that payment was refused, and alleges on information and belief that the said Jacobs' obligation to said defendant company was *discharged by the execution, delivery and acceptance of said note as alleged in the complaint.*"

It is true the replication contains allegations or statements regarding Buckley's subsequent transactions with his company with reference to the note —how the same was disposed of—but these allegations in no manner qualify or contradict the unequivocal allegation that by the execution and delivery of his note to Buckley, Jacobs then and there and in that manner paid his first year's premium on the policy. What appears thereafter with reference to what occurred between Buckley and his com-

pany were matters that need not have been plead, indeed tender no material issue, as we view it. But, we are disposed to think that these immaterial recitations (if they be immaterial) in the replication, were sustained by the proof that Buckley did endorse and deliver the note to the general agent of the company, whose cashier testified that said promissory note was entered on the bill book of the company, and credited to the collateral account of Buckley. The fact that the note was never tendered or redelivered to Jacobs or his legal representative, and its whereabouts in no manner explained, nor its disappearance from the Albuquerque office accounted for, either before or at the trial, would justify a finding that it had been accepted or appropriated by the company.

As was said in *New York Life v. Pike, supra*:

"The rights of the plaintiff do not rest at all upon estoppel. The rights of the plaintiff and the rights of the company rest entirely upon a plain contract in which estoppel plays no part."

The judgment of the trial court is not only sustained by the evidence, but no other judgment was possible. *Affirmed.*