THE PEOPLE *ex rel.* Christopher Mamer, Petitioner, *vs.* JOHN E. W. WAYMAN, State's Attorney, Respondent.

*Opinion filed October 26, 1912.*

1. MANDAMUS—*when officer may be compelled to institute quo warranto proceeding.* One whose property is sought to be taken by a railroad corporation which was duly organized and is continuing to exercise its corporate powers, cannot, in the condemnation proceeding, litigate the question whether the petitioner's charter has expired, and being without remedy in such proceeding he is entitled to have the proper public officer institute a *quo warranto* proceeding to determine that question, and may, by *mandamus,* compel the institution of the proceeding.

2. CORPORATIONS—*grants to private corporations must be construed strictly.* Grants to private corporations are to be liberally construed in favor of the public and strictly construed against the corporation, and what is not unequivocally given by the terms of the grant is to be regarded as withheld.

3. SAME—*special act of 1853 did not incorporate Fort Wayne and Chicago Railroad Company.* The special act of February 5, 1853, entitled "An act to incorporate the Fort Wayne and Chicago Railroad Company," did not bring any corporation into existence nor authorize the incorporation of one, and the fact that the act was misnamed in its title had no effect to add anything to it.

4. SAME—*effect where special act for incorporation of a railroad does not limit its existence.* The special act of 1861, which authorized the purchasers of the Pittsburgh, Fort Wayne and Chicago railroad to organize a corporation, contained no limitation on the length of time the corporation was to continue, but as the general act of 1849, then in force, limited the life of such corporations to fifty years, such limitation became a part of the corporation's charter.

5. SAME—*act of 1861 did not fix term of corporate existence.* The special act of 1861, authorizing the purchasers of the Pitts-

burgh, Fort Wayne and Chicago railroad to form a corporation, did not, by purporting to vest the corporation with all the powers of the consolidated corporation then owning the railroad, (which embraced several foreign corporations,) fix the term of corporate existence of the corporation to be organized, as the powers and privileges of a corporation formed by consolidating domestic and foreign corporations are prescribed and limited by the laws of this State.

6. RES JUDICATA—*what is not res judicata of the merits of a quo warranto suit.* A *mandamus* judgment by the Supreme Court ordering the State's attorney to file an information in the nature of *quo warranto* against certain persons, who are not parties to the *mandamus* suit, is not *res judicata* as to the merits of the *quo warranto* proceeding, even though it determines the right of the petitioner, on the showing made, to have the information filed.

ORIGINAL petition for *mandamus.*

SMEJKAL, KLENHA & KRASA, and RICE & O'NEIL, (ADOLPH J. KRASA, and ELBRIDGE W. RICH, of counsel,) for petitioner.

JOHN E. W. WAYMAN, State's Attorney, (THOMAS MARSHALL, and LOESCH, SCOFIELD & LOESCH, of counsel,) for respondent.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

At the last term of this court leave was given to the relator, Christopher Mamer, to file a petition for a writ of *mandamus* commanding the defendant, John E. W. Wayman, State's attorney of Cook county, to file in the circuit court of said county a petition for leave to file an information in the name of the People of the State of Illinois, in the nature of *quo warranto,* against Charles Lanier and other persons assuming to act as officers and directors of the Pittsburgh, Fort Wayne and Chicago Railway Company, requiring them to answer to the People by what right they claim to exercise the rights, privileges and franchises

of a corporation. The petition was filed and was accompanied by a copy of the petition presented to the defendant to be filed in the circuit court and which he had refused to file, and also with an affidavit of the facts alleged therein. The defendant demurred to the petition and the cause was submitted for decision upon the demurrer.

The facts alleged in the petition presented to the defendant by the relator, and which are admitted by the demurrer, are as follows: On February 5, 1853, the General Assembly passed an act entitled "An act to incorporate the Fort Wayne and Chicago Railroad Company." Although so entitled, the act did not bring into being any corporation or authorize the incorporation of one. The first section authorized the Fort Wayne and Chicago Railroad Company, as organized under an act of the General Assembly of the State of Indiana, to locate, construct, maintain and use its railroad from a point on the western line of Indiana, in Cook county, to the city of Chicago. The remaining sections related to and fixed various conditions under which the privilege was to be enjoyed. The second gave the corporation the same right to sue and to be sued as other corporations within the State, and it was to be subject to and under the control of the proper authorities as perfectly as if the corporation had been created by the law of this State. Other sections provided that a statement of the cost of construction should be filed and the stock of the company to that amount should be subject to State and county taxes, which the Treasurer was to retain out of dividends; that the corporation might exercise the power of eminent domain within this State given by the general Railroad Incorporation act of 1849; that it might borrow money and acquire property, and that two additional directors should be chosen, who should be stockholders and citizens of Chicago. There was a mistake in the christening and there was nothing whatever in the act for the incorporation of any railroad company. The fact that the act was mis-

named in the·title had no effect to add anything to the
enactment.    There was a general act in force February
28, 1854, authorizing railroad and ·plankroad companies to
consolidate their property and stock with each other and
to consolidate with corporations outside of the State witli
whose lines their lines connected.   On February 28, 1856,
articles of consolidation were filed in the office of the Sec-
retary of State purporting to consolidate the Indiana cor-
poration, the Fort Wayne and Chicago Railroad Company,
and two other foreign corporations, (the Ohio and Penn-
sylvania Railroad Company and the Ohio and Indiana Rail-
road Company,) under the provisions of that act, by the
name of "The Pittsburgh, Fort Wayne and Chicago Rail-
road Company."   The General Assembly passed another
act in force February 8, 1861, entitled "An act to perfect
the title of the purchasers of the Pittsburgh, Fort Wayne
and Chicago Railroad Company, and to enable them to
form a corporation and defining the powers and duties of
such corporation."   That act provided that in case said
railroad should be sold by virtue of any mortgage or mort-
gages, deed or deeds of trust, by foreclosure or in pur-
suance of any power, the purchaser or purchasers, and his
or their associates or assigns, might form a corporation by
filing ·in the office of the Secretary of State a certificate
specifying the name of the corporation, the number of di-
rectors and various other things, and thereupon the persons
signing such certificate, and their successors, should be a
body corporate and politic by the name stated therein; that
the corporation formed pursuant to the act should have
power to acquire, by purchase or otherwise, and to hold,
use and enjoy, the Pittsburgh, Fort Wayne and Chicago
railroad within and without this State, and all its property,
franchises, rights and things connected therewith, and that
it should possess all the facilities of any of the corpora-
tions consolidated into said company.   In the act it was
nowhere provided for what term the corporation should

continue or for how many years it should exist, but by the general act of 1849 for the organization of railroad corporations the life of said corporations was limited to fifty years. That act provided that not less than twenty-five persons might form a corporation for the purpose of constructing, owning and maintaining a railroad, by filing articles of association in the office of the Secretary of State and complying with the conditions specified in the act, provided that the number of years the same should continue should not exceed fifty. On February 28, 1862, a certificate of incorporation was filed with the Secretary of State in pursuance of the act of 1861, incorporating the Pittsburgh, Fort Wayne and Chicago Railway Company. Charles Lanier and the other persons named in the petition continue to act as a corporation and are maintaining a petition in the superior court of Cook county for condemnation of property and real estate of the relator. The legal conclusion stated in the petition is, that the life of the corporation terminated by limitation in fifty years from February 28, 1862,—on February 28, 1912,—and that said persons, by continuing to exercise the rights of a corporation, have usurped the powers, immunities and franchises granted to railroad corporations organized under and by virtue of the laws of this State.

The first legal proposition presented in the argument in support of the demurrer is, that the petition is insufficient because the powers and privileges conferred upon the corporation organized under the law of 1861 were enumerated by reference to charters of other corporations which are not set out in the petition or as exhibits thereto. Powers may be granted to a corporation by reference to the powers of other corporations without specifically enumerating them, (*Shields* v. *Ohio*, 95 U. S. 319,) and the act of 1861 provided that the corporation that might be formed by the purchasers of the railroad should have all the powers of the consolidated corporation. But that provision has

no relation to the question how long the corporation possessed of those powers should exist. It is not denied that the corporation possessed all the powers of the consolidated corporation during its corporate life, and it was not necessary to set out what those powers were.

It is next contended that the State cannot be compelled, by *mandamus,* to proceed by information in the nature of *quo warranto* to forfeit the charter of a corporation, and that the relator has no right, under the law, to compel the defendant, representing the public, to file the petition. This is not a proceeding to forfeit the charter of a corporation, and its only purpose is to determine the question whether the charter has expired by limitation. It is the same question that would be involved in any case where persons assume to act as a corporation and it is alleged that there is no corporation. The proceeding can only be instituted by some one representing the public and the question cannot be adjudicated in a collateral proceeding between an individual and the corporation, but it does not follow that an individual having a personal right and interest may not compel the performance of the public duty. That question was settled in *People* v. *Healy,* 230 Ill. 280, and *Same* v. *Same,* 231 id. 629. In this case the relator has a private and personal grievance in the fact that the persons named in the petition are proceeding to take his property by the exercise of the power of eminent domain, without any authority of law. The proceeding by information in the nature of *quo warranto* is the only remedy which he can have to prevent a threatened wrong. The petitioner in the condemnation proceeding having been organized in pursuance of law authorizing its incorporation and still continuing to exercise corporate powers, the relator cannot interpose his defense in that proceeding.

A large part of the argument for the defendant is, that the question of the duration of the corporate life and the right of persons named in the petition to exercise corporate

powers can only be tried by information in the nature of *quo warranto,* and counsel for the relator concede that to be true, and that the relator could not require the court, in the condemnation proceeding, to determine the question. Cases like *People* v. *Colorado Eastern Railroad Co.* 8 Colo. App. 301, can have no influence upon the question here presented. It was held in that case that there was an ample remedy for the private wrong by a different proceeding, and that if the law officers refused to proceed, a private relator could proceed and file an information to remedy the public wrong, and therefore the proceeding brought in the name and with the consent of the district attorney was unnecessary to defend or protect the interests of the property owner.

No corporation was created by the act of 1853, and what the effect of the proceeding for consolidation and the recognition of the consolidation in the act of 1861 had, it is unnecessary to consider. The general act of 1849 provided for the incorporation of railroad companies by persons contemplating the construction and operation of a railroad. The act of 1861 was a special act for the benefit of the purchasers of the Pittsburgh, Fort Wayne and Chicago railroad under foreclosure proceedings, and it extended the same privilege to those persons but fixed no time for the existence of the corporation. Eternal life is not an essential attribute of corporate existence but the duration of such existence must be fixed in some way. If it may ever be implied that a corporation created to perform some specific act or accomplish some purpose is to exist until the act is completed or the purpose accomplished, there can be no implication of law that the corporation authorized by the act of 1861 was to have perpetual existence. This is made clear by the limitation in the general Incorporation act of the life of corporations formed to build and operate railroads. It is only by the application of the general Incorporation act of 1849 that existence was

given to the corporation for fifty years. The familiar rule
of construction applicable to grants to private corporations
is, that they are to be construed liberally in favor of the
public and strictly against the corporation, and what is not
unequivocally given by the terms of the act is to be re-
garded as withheld. The only thing in the act of 1861
relating in any manner to succession was, that the persons
who should sign the certificate, and their successors, should
be a body politic and corporate; but that provision only im-
plied a continuance of the succession during the period that
the corporation might lawfully exist. The only statute in
existence which could by any possibility be applied to the
corporation in question limited the life of railroad corpo-
rations to fifty years. It was decided in *People* v. *Scott
Macadamized Road Co.* 207 Mo. 54, (13 Ann. Cas. 656,)
that where a charter fixed a definite period for the cor-
porate existence, the fact that the charter provided for per-
petual succession did not extend the period so fixed. The
principle of strict construction against the corporation was
applied in *St. Clair County Turnpike Co.* v. *People,* 82 Ill.
174, where the charter was granted for twenty-five years,
with the privilege of holding and using the corporate prop-
erty until the State exercised its option to purchase the
turnpike, and an amendatory act authorized the extension
of the road across Cahokia creek, using the bridge over the
creek and a dyke. It was held that the amendatory act
did not authorize the corporation, after the expiration of
the twenty-five years, to use and enjoy the corporate privi-
leges granted by the amendment and not expressly extended
beyond the time fixed in the original charter. On appeal
to the Supreme Court of the United States it was held that
the amendatory act authorizing the extension of the road
without specifying any term for the duration of the right
did not extend the original time stated for the expiration
of the first grant. *St. Clair County Turnpike Co.* v. *Illi-
nois,* 96 U. S. 63.

Whatever effect may be given to the proceeding for consolidation of the foreign corporations and its recognition in the act of 1861, the charter privileges, powers and obligations of the consolidated corporation were prescribed and limited by the law of this State. (*Ohio and Mississippi Railway Co.* v. *People,* 123 Ill. 467.) The laws of the several States have no extra-territorial force, and the provision conferring upon the corporation organized under the act of 1861 the powers possessed by the consolidated corporation did not purport to, and could not, fix the term of the corporate existence. The petition stated facts showing *prima facie* that the relator was lawfully entitled to relief against a threatened wrong, which would be prevented by a judgment that the charter of the corporation has expired by limitation, and the duty therefore rested upon the State's attorney to sign and present the petition for leave to file the information. When the information shall be filed and the persons named therein are called upon to answer to the People by what warrant they claim to exercise the rights, privileges and franchises of a corporation, they may demur or plead to the information, according to the practice in such cases. As they are not parties to this suit the judgment awarding the writ will not be *res judicata* against them, or concerning any right they may have or claim or any defense they may make. The only effect of the judgment in this case will be to compel the filing of an information and the beginning and prosecution of the suit.

The demurrer is overruled and the writ awarded as prayed for.                              *Writ awarded.*