## The People of the State of Illinois, ex rel. G. Frank Lydston, Appellant, v. Maclay Hoyne, State's Attorney, Appellee.

### Gen. No. 17,736.

1. CORPORATIONS, § 181*—*place of holding corporate meetings.* A corporation organized not for profit under the laws of Illinois cannot lawfully hold its corporate meetings outside of the State.

2. CORPORATIONS, § 240*—*place of holding elections.* The election of directors or trustees of a corporation is a corporate act requiring the election to be held within the State which granted the charter.

---

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

3. CORPORATIONS, § 240*—*statutes construed, as to place of holding elections.* Sections 20 and 32 of the Corporation Act, J. & A, ¶¶ 2437, 2450, do not authorize election of trustees to be held without the State.

4. CORPORATIONS, § 665*—*where corporate acts must be performed.* Corporate acts, strictly so called, as distinguished from ordinary business transactions such as may be performed by agents, can only be lawfully performed in the State in which the corporation was created, and such rule applies to corporations organized not for profit.

5. CORPORATIONS, § 181*—*place of holding directors' meetings.* Acts of directors at directors' meeting are not corporate acts, requiring such meetings to be held in the State where corporation was created.

6. CORPORATIONS, § 184*—*voting by delegates selected by constitutent assemblies.* A corporation organized under the laws of this State cannot by its by-laws provide for the election of its trustees by delegates selected by constituent assemblies in this and other States, instead of an election by the members, in person or by proxy.

7. CORPORATIONS, § 247*—*when member may compel quo warranto proceedings against officers illegally elected.* A member of an Illinois corporation deprived of the right to vote for trustees, except by and through delegates selected from constituent assemblies in elections held without the State, may file a petition for mandamus to compel the State's Attorney to sign a petition for leave to file an information in the nature of a quo warranto against trustees so elected.

McSURELY, P. J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed and remanded. Opinion filed October 9, 1913.

STEDMAN & SOELKE, for appellant.

FREDERICK Z. MARX, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

This is an appeal from a judgment dismissing a petition against the State's Attorney, seeking to com-

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

pel him, by mandamus, to sign a petition for leave to file an information in the nature of a quo warranto alleging, in substance, that certain persons therein named were unlawfully elected and acting as trustees for the American Medical Association, an Illinois corporation, not for profit. A general demurrer to the petition for mandamus was sustained by the Circuit Court, whereupon the relator elected to stand by his petition and appealed.

Three questions are raised in the brief of appellant's counsel which may be stated as follows: (1) Do the facts stated in the petition show, *prima facie,* such a case of usurpation of office as entitles the relator to have that question determined upon information in the nature of a quo warranto? (2) Is an election of trustees of an Illinois corporation not for profit, held outside of this State, voidable at the instance of nonparticipating and nonconsenting members of such corporation? (3) Can the by-laws of such a corporation lawfully provide for the election of its trustees by delegates selected by "constituent assemblies" in this and other States, instead of an election by the members of the association, in person or by proxy?

The petition presented to the State's Attorney for his signature recites that the American Medical Association is a corporation not for profit, organized under the laws of Illinois in April, 1897; that its charter states that "the location is in the City of Chicago, County of Cook and State of Illinois;" that the object for which it is formed is to promote the science and art of medicine; that the management of the association shall be vested in a board of nine trustees "who are to be elected as the by-laws direct;" and that nine persons (naming them) shall be the trustees for the first year of the corporate existence. The petition then avers that said association adopted a constitution and by-laws, a copy of which is attached to the petition.

The constitution provides that "the membership of this Association shall consist of such members of the Constituent Associations and of such medical officers of the Army, of the Navy and of the U. S. Public Health & Marine Hospital Service, as shall make application in accordance with the by-laws;" that all state and territorial medical associations which have, or may, become organized in accordance with the general plan of organization of the American Medical Association, and which have declared, by resolution, "their allegiance" thereto, and "shall agree with other state and territorial medical associations to the formation and the perpetuation of the House of Delegates of the American Medical Association," shall be recognized as constituent associations, on acceptance of their applications for recognition by the House of Delegates; that the House of Delegates shall consist of delegates elected by the constituent associations and "shall represent the delegated powers of the members of the American Medical Association;" that said House of Delegates shall elect the general officers and trustees of the American Medical Association; that three trustees shall be elected annually to serve for three years; that an "annual session" of the Association shall be held at a time and place to be fixed by the House of Delegates. The by-laws provide that any physician "reported as a member in good standing of a constituent association by the secretary of that association," who shall make application and pay the annual assessment and the subscription to the Journal of the American Medical Association for the current year, "shall be a member," which membership shall continue "so long as he is a member in good standing of the constituent association of the state in which he resides," and so long as he continues to pay his annual assessment and subscription to the Journal. The by-laws also provide for the election by the constituent associations of delegates to the House of Delegates, which meets annually on the day preceding the

annual session of the American Medical Association at the same place as the annual session, and then and there elects the trustees and officers of the Association. The duties of the officers and trustees are also defined by the by-laws. The trustees "shall have charge of all properties and of the financial affairs of the Association," superintend the publication of the Journal and proceedings of the Association, audit the accounts of the treasurer and of the Journal office and "have full control of all arrangements for the annual sessions."

The petition then avers that the Chicago Medical Society is a "constituent association" of the American Medical Association; that the relator is a licensed, practicing physician in Chicago and a member of the Chicago Medical Society; that he has complied with all the rules and regulations of the American Medical Association, has paid his dues regularly for more than ten years and has been duly accepted and recognized as a member of said Association; that as such member he has repeatedly demanded the right to vote for trustees thereof, but that the Association has refused to permit members to elect the trustees "except through and by virtue of delegates representing subordinate bodies;" that in 1908 the House of Delegates assembled in Chicago and elected three trustees, whose terms expired in 1911; that in June, 1909, the House of Delegates assembled at Atlantic City, New Jersey, and there elected three trustees whose terms expire in 1912, and in June, 1910, at St. Louis, Missouri, elected three trustees whose terms expire in June, 1913. The petition charges that the Association has no power under its charter and the laws of Illinois to hold an election for trustees outside of the State of Illinois, and no power to deprive its members of the right to vote for the trustees; that the election of said trustees was never ratified nor confirmed by the members of said Association, either individually or collectively, in the State of Illinois; that the "pretended election" of said

trustees was without authority of law and was null and void, and that said trustees are now unlawfully holding themselves forth as trustees and unlawfully acting as such trustees without having been legally elected to such offices. The petition concludes with a prayer for leave to file an information in the nature of a quo warranto against said acting trustees. Attached to the petition is an affidavit by the relator as to the truth of the facts stated in the petition. When this petition and affidavit were presented to the State's Attorney for signature he declined to sign it. A similar application to the Attorney General was likewise refused.

In *People v. Healy,* 230 Ill. 280, it was held that where an individual having a private right or grievance distinct from that of the public at large, which is enforceable by a proceeding under the quo warranto statute, presents his petition to the State's Attorney for signature, accompanied with an affidavit as to the truth of the statements of fact therein, the only discretion possessed by the latter is to determine whether the petition and the accompanying affidavit are in proper form and state a *prima facie* case under the statute, and if the petition and affidavit are sufficient the State's Attorney may be compelled by mandamus to sign and present the petition. The petition here presented to the State's Attorney and the accompanying affidavit were in proper form and related, we think, to a private right or grievance distinct from that of the public at large which was enforceable by a proceeding under the quo warranto statute of this State. Hence, under the rule announced in the *Healy case, supra,* the only discretion possessed by the State's Attorney was to determine whether the facts stated in the petition, assuming them to be true, were sufficient to make a *prima facie* case of usurpation of office by the defendants named in the petition. When the State's Attorney refused to sign the petition he thereby, in effect, took the position that neither the fact

that the acting trustees of the American Medical Association were elected at meetings held outside of this State, nor the fact that such meetings were held not by the members as such, but only by delegates of the constituent associations, nor the combination of these facts, was sufficient to show a want of title to the office of trustees in the persons so elected. Whether the position thus taken by the State's Attorney is correct, as a matter of law, is therefore, the real question presented by this record, the facts as stated in the petition being not denied by him but admitted by the demurrer.

In an early case in the United States Supreme Court, Chief Justice Taney said that "a corporation can have no legal existence out of the boundaries of the sovereignty by which it was created;" that "it exists only in contemplation of law, and by force of the law, and where that law ceases to operate and is no longer obligatory, the corporation can have no existence;" that "it must dwell in the place of its creation, and cannot migrate to another sovereignty." But the Court also added the qualification or explanation that "although it must live and have its being in that State only, yet it does not by any means follow that its existence there will not be recognized in other places; and its residence in one State creates no insuperable objection to its power of contracting in another." *Bank of Augusta v. Earle,* 13 Pet. 519, 588. This statement of the law has been quoted and followed in many later cases, in the same and other courts. *Shaw v. Quincy Min. Co.,* 145 U. S. 444, 449; *Galveston, H. & H. R. Co. v. Cowdrey,* 11 Wall. (U. S.) 459; *Miller v. Ewer,* 27 Me. 509; *Duke v. Taylor,* 37 Fla. 64; *Franco-Texan Land Co. v. Laigle,* 59 Tex. 339; *Aspinwall v. Ohio & M. R. Co.,* 20 Ind. 492; *Arms v. Conant,* 36 Vt. 744; *Hilles v. Parrish,* 14 N. J. Eq. 380. In *Shaw v. Quincy Mining Co., supra,* it was said: "This statement has been often reaffirmed by this court, with some change of phrase, but always retaining the idea that the legal existence, the home,

the domicile, the habitat, the residence, the citizenship of the corporation can only be in the State by which it was created, although it may do business in other States whose laws permit it.''

In applying this principle to the facts of particular cases the authorities are practically unanimous in holding that corporate acts, strictly so called, as distinguished from ordinary business transactions such as may be and usually are performed by agents, can only be lawfully performed within the boundaries of the State by which the corporation was created. 1 Thompson on Corporations (2d Ed.) sec. 500. This is the law in this State. In *Harding v. American Glucose Co.,* 182 Ill..551, it was said (p. 614) : ''It has been recognized as a general rule by this court, that the power of a corporation to perform corporate acts outside of the State of its creation, and where the laws of its corporate existence have no force, does not exist.'' In *Reichwald v. Commercial Hotel Co.,* 106 Ill. 439, it was said that ''the courts differ as to what are corporate acts and what are acts merely of agents,'' and it was there held that the acts of the directors of an Iowa corporation, at a meeting of such directors held in Illinois, authorizing and approving the sale of certain property in satisfaction of a mortgage, were not corporate acts, but were merely ''acts done by the directors in the exercise of their powers as agents of the corporation,'' and therefore could lawfully be done outside the State of Iowa. In *Bastian v. Modern Woodmen of America,* 166 Ill. 595, it was held that the act of changing the articles of association is ''unquestionably'' a corporate act, and in the *Harding case, supra,* acts done at a meeting of stockholders are treated as in the same category. In the light of these decisions, it seems clear that the election of directors or trustees of a corporation must be regarded as a corporate act and therefore, under the rule above stated, such an election must be held within the State which granted the charter.

It is urged, however, that the general rule in this respect applies only to ordinary business corporations and is not applicable to corporations not for profit. Two reasons are advanced in support of this alleged distinction, first, that many, if not most, corporations not for profit are national, or even world-wide, in their scope, which makes it impracticable to hold all their corporate meetings in one State; and second, that the statutes of this State recognize a distinction in this respect between corporations for profit and those not for profit. The first of these reasons is one of the reasons given by the Supreme Court of Pennsylvania for its decision in *Derry Council v. State Council,* 197 Pa. St. 413, holding that a *per capita* tax levied by the National Council of a Pennsylvania corporation not for profit was valid though levied at a meeting held in Minneapolis. We think the reasoning of the Court in that case is unsound in principle and unsupported by authority. Many stock corporations, as well as corporations not for profit, conduct enterprises which are national in character and scope, but that fact has never been regarded as furnishing any ground for exempting such corporations from the rule that a corporation must have a domicile somewhere in which its corporate acts must be performed. It would hardly be contended that an individual citizen of this State could exercise his right of suffrage in any State to which his business, or his philanthropies, might extend, so long as he maintains his legal residence here. Yet the same principle which prevents a man being a citizen of two states at the same time applies to corporations as well as individuals. "As a corporation can only exist, as a legal entity, within the bounds of the sovereignty in which it has been created, it follows, as a corollary of that proposition, that corporations cannot have two domiciles." 1 Thompson on Corporations (2d Ed.) sec. 493. "If any person, natural or artificial, as a result of choice or on technical grounds of birth or creation, has a domicile in one

place, it cannot have one elsewhere, because what the law means by domicile is the one technically preeminent headquarters, which, as a result either of fact or of fiction, every person is compelled to have in order that by aid of it certain rights and duties which have been attached to it by the law may be determined. It is settled that a corporation has its domicile in the jurisdiction of the State which created it, and as a consequence that it has not a domicile anywhere else.'' Holmes, J. in *Bergner & Engel Brewing Co. v. Dreyfus,* 172 Mass. 158, citing *Shaw v. Quincy Min. Co., supra,* and other cases. This settled general rule does not prevent any corporation formed under the laws of this State from doing business in any other State or country whose laws permit it. But the mere fact that it does business in other States does not make it a corporation of any such State. There it is a ''foreign'' corporation and is there recognized as such, if at all. Its rights and duties there as a foreign corporation are different from those which are incorporated there. It cannot be considered an Illinois corporation today, a Missouri corporation tomorrow and a New Jersey corporation the next day, merely because it does business here today and there tomorrow or the day after. It cannot thereby become an incorporated ''will o' the wisp.'' There is no law which compels such associations as the one here in question to become incorporated. Presumably this association chose the corporate form of organization because it possessed certain advantages over that of a voluntary association or partnership. Having chosen Illinois as its domicile by the act of incorporation, it must conform to the laws of Illinois.

This conclusion naturally suggests the second reason advanced, viz: That the statutes of this State permit corporations not for profit to hold their corporate meetings anywhere, while they deny this right to business corporations. This contention is founded upon the language of sections 20 and 32 of the Corporation

Act (J. & A. ¶¶ 2437, 2450). Section 20, however, does not refer to corporate meetings, but to directors' meetings. The acts of directors at directors' meetings are not corporate acts, but the acts of agents merely, which, were it not for the prohibition contained in section 20, might lawfully be performed anywhere. *Reichwald v. Commercial Hotel Co., supra.* Under that section the recognized rule as to corporate acts is extended to cover all acts of directors outside of the State unless such acts are authorized or ratified at a meeting held within the State. While that section does not use the words "within the State," its language was so construed in *Place v. People,* 192 Ill. 160, 164. Section 32 provides that "corporations, associations and societies not for pecuniary profit, formed under the provisions of this act, may elect trustees, directors or managers from the members thereof in such manner at such times *and places,* and for such periods as may be provided by the certificate of incorporation, or in case such certificate does not contain such provisions, then as may be provided by the by-laws." It is contended that this section gives specific authority to corporations not for profit to hold their corporate meetings and elect trustees at any time and place and in any manner "provided by the by-laws," whether in this State or elsewhere. To this contention it might be technically replied that, even if section 32 could be given the construction contended for, the by-laws of the American Medical Association do not in fact provide for any particular place or places at which corporate meetings shall be held for the election of trustees, but attempt to delegate the power of the members to elect trustees to the House of Delegates. Section 31 of the Corporation Act authorizes the trustees to make by-laws not inconsistent with the laws of the State, "which by-laws, among other things * * * shall provide for annual meetings of such *members,*" and also that "at any such meeting, *members* of the corporation may take part and vote *in per-*

*son or* by proxy.'' In view of these provisions of the statute, the right and power of the trustees to delegate to the House of Delegates (who are not trustees) their statutory duty and authority to fix the place of the annual meetings of members, and the right and power of the trustees to provide for the election of trustees by a vote of any part less than the whole number of members, may well be doubted. But aside from such considerations, we think that the words ''at such places as may be provided by the by-laws'' must be construed to refer to places *within the State.* Section 30 of the act clearly contemplates that every such corporation shall have a principal place of business in some county in this State, and the language quoted from section 32 was evidently intended to authorize the holding of elections for trustees either at that place or at any other place within the State, as the by-laws should provide. Certainly it cannot be presumed, merely from the use of the quoted words, that the legislature intended to refer to places beyond the limits of its own jurisdiction where its laws could have no operative force and effect. In *Franco-Texan Land Co. v. Laigle, supra,* it was said: ''It is, to say the least, doubtful whether or not a State could grant a corporation the right to change its residence to another sovereignty at its own will, and there exist and perform its corporate functions.'' The rule of construction applicable to statutory provisions is ''that every power that is not *clearly* granted is withheld, and that any ambiguity in the terms of the grants must operate against the corporations.'' *American Loan & Trust Co. v. Minnesota & N. W. R. Co.,* 157 Ill. 641, 651; *Fritze v. Equitable B. & L. Society,* 186 Ill. 183, 196. ''Where the charter or law is silent as to the power sought to be exercised, it does not exist; and wherever a grant of corporate power is claimed by a corporation, it must clearly appear, and will not be inferred or presumed.'' *Knapp v. Supreme Commandery, etc.,* 121 Tenn. (13 Cates) 212. Here it does not clearly

appear from the language used in section 32, or elsewhere in the Corporation Act, that corporations not for profit are given the power claimed in this case to hold corporate meetings outside of the State of Illinois; nor does it clearly appear that the power is anywhere given to take from the members, by means of by-laws, the right to vote, "in person or by proxy," for trustees, and vest that right in delegates selected by the constituent associations. We therefore must conclude that the powers claimed have never been granted to, and are not possessed by, the association in question.

In our opinion, the Circuit Court erred in sustaining the demurrer to the petition for mandamus, and its judgment will therefore be reversed and the cause remanded.

*Reversed and remanded.*

MR. PRESIDING JUSTICE McSURELY dissents.