## The People of the State of Illinois ex rel. Maclay Hoyne, Appellant, v. W. W. Grant et al., Appellees.

### Gen. No. 23,155.

1. COURTS, § 151*—*when opinion of Appellate Court is not binding in another cause.* Under the statutory provision (J. & A. ¶ 2977) providing that the opinions of the Appellate Court shall not be of binding authority in any cause or proceeding other than that in which they are filed, the opinion of one branch of that court on certain questions does not bind another branch of that court in another suit in which the parties are different, though the same questions are involved.

2. COURTS, § 146*—*where conclusions of Supreme Court are to be found.* The conclusions of the Supreme Court in regard to questions of law are to be found in its reported decisions and are not to be deduced inferentially from its action in denying writs of certiorari.

3. COURTS, § 146*—*how language in decision must be construed.* The language used by the court in rendering a decision must be taken in connection with the circumstances in which it was rendered.

4. CERTIORARI, § 57*—*what is effect of denial of writ by Supreme Court.* By denying a writ of certiorari, the Supreme Court does not review the judgment of the Appellate Court but declines to do so, which does not make the judgment of the latter court final, but leaves its finality undisturbed.

5. COURTS, § 150*—*when action of Supreme Court in denying petition for writ of certiorari in a case decided by the Appellate Court does not bind Appellate Court of another department.* The action of the Supreme Court in denying a petition for a writ of certiorari in a case decided by the Appellate Court does not constitute an authoritative declaration in regard to the questions of law involved so as to preclude the Appellate Court of another department from passing upon such questions in another proceeding in which the parties are not the same as in the first suit.

6. CORPORATIONS, § 325*—*what powers are possessed by.* Corporations, whether for pecuniary profit or otherwise, have such powers, and such only, as are vested in them by the laws of the State under which they are organized.

7. CORPORATIONS, § 181*—*what is discretion of association as to*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*place of election of trustees*. Under the powers conferred by section 32 of the Corporation Act (J. & A. ¶ 2450), on corporations not for pecuniary profit, the place at which the trustees of an association organized thereunder are to be elected is left to the discretion of the association, and it is not required that the election be held within the State.

8. Corporations, § 333*—*when may not perform corporate acts outside of State*. While business corporations and organizations of a like nature, such as insurance companies and benefit associations, may engage in business in foreign jurisdictions, they may not perform corporate acts outside of the State, unless such authority has been directly conferred upon them.

9. Corporations, § 8*—*distinctions between those for pecuniary profit and those not*. The fundamental distinctions between corporations for pecuniary profit and those not for pecuniary profit discussed.

10. Corporations, § 326*—*how powers of not for pecuniary profit interpreted*. The character and purposes of corporations not for pecuniary profit are such as to warrant a liberal interpretation of the broad powers conferred upon them as to their place, manner of selecting officers, and similar matters.

11. Statutes, § 196*—*how interpreted*. A statute is to be interpreted in the light of the circumstances in which it was enacted.

12. Statutes, § 205*—*what presumption raised as to intention of Legislature in enacting statute authorizing election of trustees of corporation not for pecuniary profit*. The Legislature in adopting section 32 of the Corporation Act (J. & A. ¶ 2450), authorizing corporations not for pecuniary profit to elect trustees "at such times and places" as they may determine upon, is presumed to have had in mind the matter of common knowledge that many of the organizations of that character had memberships scattered throughout the country and were accustomed to hold their meetings, from time to time, at different large cities.

13. Corporations, § 71*—*when by-law sufficiently provides place for election of trustees of corporation not for pecuniary profit*. A by-law provision which fixes the method by which the place for the election of the trustees of the corporation shall be determined sufficiently provides for the place of election within the provision of section 32 of the Corporation Act (J. & A. ¶ 2450), that the election of the trustees of corporations not for pecuniary profit may be held at such places "as may be provided by the by-laws."

14. Corporations, § 184*—*how trustees of corporation not for profit may be elected*. Under section 32 of the Corporation Act

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The People v. Grant, 208 Ill. App. 235.

(J. & A. ¶ 2450), a corporation not for pecuniary profit which has a membership scattered throughout the country may elect the trustees through delegates selected by local groups of members, notwithstanding the provision of section 31 (J. & A. ¶ 2449), giving members the right to vote in person or by proxy at special and annual meetings.

15.  CORPORATIONS, § 184*—*what is purpose of statute giving members right to vote by proxy.* The purpose and effect of section 31 of the Corporation Act (J. & A. ¶ 2449) is merely to secure to members the right to vote by proxy upon such matters as properly come before special and annual meetings of the corporation.

O'CONNOR, J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1917. Affirmed. Opinion filed November 30, 1917.

STEDMAN & SOELKE, for appellant; SWAN M. JOHNSON, of counsel.

LOESCH, SCOFIELD, LOESCH & RICHARDS, for appellees.

MR. PRESIDING JUSTICE GOODWIN delivered the opinion of the court.

Appellant, who will be referred to as the relator, seeks the reversal of a judgment in favor of appellees, who will hereinafter be referred to as defendants, in a proceeding in which he had, by the permission of the court, filed an information against the defendants, alleging, in substance, that the American Medical Association was a corporation not for pecuniary profit, organized under the laws of the State of Illinois in 1897, with a charter which vested its management in nine trustees to be elected as the by-laws might direct; that there was no power or authority under the laws of the State of Illinois permitting it to elect a board of trustees "without the said State of Illinois"; that it adopted by-laws providing that the State and local

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

organizations should elect delegates to a national House of Delegates, which should elect trustees "at such place in such city and State as such House of Delegates might assemble"; and that the association had no power to deprive members "of the right to vote for and elect a board of trustees," or to elect such trustees "without the boundaries of the State of Illinois." It further alleges that three of the re-spondents were elected trustees in Minneapolis, Minnesota, in 1913, three in Atlantic City, New Jersey, in 1914, and three in San Francisco, California, in 1915, and that they usurped the office of trustee of the American Medical Association.

When defendants' demurrer to this information was sustained, relator elected to stand by the information, and judgment was entered for the defendants. The language of the information stating the provisions of the by-laws in regard to the election of trustees is not clear, but counsel for relator have set out in their briefs the provisions of the by-laws recited in relator's petition for leave to file the information, as follows:

"Article 3—Membership.

"The membership of this association shall consist of such members of the constituent associations and of such medical officers of the army, of the navy and of the United States public health and marine hospital service as shall make application in accordance with the by-laws hereinafter provided.

"Article 4—Constituent Associations.

"State and territorial medical associations which have, or which hereafter may, become organized in accordance with the general plan of organization of the American Medical Association, and * * * declare allegiance to the formation and the perpetuation of the House of Delegates of the American Medical Association shall be recognized as constituent associations, etc.

"Article 5—House of Delegates."

Section one provides that the business body shall be known as the House of Delegates and "consist of delegates elected by the constituent associations, by the scientific sections of the American Medical Association, from the medical departments of the army and of the navy, and from the United States public health and marine hospital service"; that the House of Delegates shall represent the "delegated powers    *    *    * and shall be the national representative body of the constituent associations."

Counsel further say that the by-laws provide that the House of Delegates shall elect the general officers of the association and the trustees; that its membership shall not exceed 150.

The position of the relator is that an election of a trustee at a meeting held outside of the State of Illinois is void, and that the provisions for the election of delegates by State and medical associations, and the election of trustees by such delegates, are also void. These questions were before another division of this court in *People v. Hoyne,* 182 Ill. App. 42, and in that case a majority of the court sustained the contentions now made by the relator. There seems to have been an assumption on the part of the relator that this decision is binding upon the parties to the instant suit, but obviously it is not, since the statute expressly provides "that such opinions shall not be of binding authority in any cause or proceeding other than that in which they may be filed." This is not the same cause, nor are the parties the same. On the argument it was further suggested that as an application had been made to the Supreme Court in that case for a writ of certiorari and denied, the court, by such action, passed upon the merits of the controversy, and thus declared itself to be in harmony with the conclusion reached by the Appellate Court. This contention, in our judgment, involves an entire misconception of the purpose and effect of the statutory provisions in regard to writs of certiorari. Those provisions are

substantially identical with a section of the United
States statute providing for the issuance of writs of
certiorari to the Circuit Court of Appeals, which is
as follows:

"In any case, civil or criminal, in which the judg-
ment or decree of the circuit court of appeals is made
final by the provisions of this Title, it shall be com-
petent for the Supreme Court to require, by certiorari
or otherwise, upon the petition of any party thereto,
any such case to be certified to the Supreme Court
for its review and determination, with the same power
and authority in the case as if it had been carried by
appeal or writ of error to the Supreme Court."

The conditions which led to the enactment of the
State statute were also substantially similar to those
which brought about the provision for writs of cer-
tiorari to the United States Circuit Court of Appeals,
referred to by Mr. Justice Brewer in *Forsyth v. City
of Hammond,* 166 U. S. 506, at page 511, where he
says:

"Up to the time of the passage of the Act of 1891,
creating the Circuit Courts of Appeal, the theory of
federal jurisprudence had been, a single Appellate
Court, to wit, the Supreme Court of the United States,
by which a final review of all cases of which the lower
federal courts had jurisdiction was to be made. * * *
The rapid growth of the country and the enormous
amount of litigation involving questions of a federal
character so added to the number of cases brought
here for review, that it was impossible for this court
to keep pace with the growing docket. The situation
had become one of great peril, and many plans for
relief were suggested and discussed."

He then states the provisions for the Circuit Courts
of Appeal, and continues:

"It was obvious that all contingencies in which a
decision by this tribunal was of importance could not
be foreseen, and so there was placed in the act creat-
ing the Courts of Appeal, in addition to other provi-
sions for review by this court, this enactment:"

He then quotes the language of the statute, and later continues:

"Obviously, a power so broad and comprehensive, if carelessly exercised, might defeat the very thought and purpose of the act creating the Courts of Appeal. So exercised it might burden the docket of this court with cases which it was the intent of Congress to terminate in the Courts of Appeal, and which, brought here, would simply prevent that promptness of decision which in all judicial actions is one of the elements of justice.

"So it has been that this court, while not doubting its power, has been chary of action in respect to certioraries. It has said: 'It is evident that it is solely questions of gravity and importance that the Circuit Courts of Appeal should certify to us for instruction; and that it is only when such questions are involved that the power of this court to require a case in which the judgment and decree of the Court of Appeals is made final, to be certified, can be properly invoked.'"

It seems a conclusive answer to the relator's contention to say that, during the 26 years that the United States certiorari act has been in force, there does not appear to be a case in which counsel have suggested that the Supreme Court, by denying the writ of certiorari, stamped the conclusions of the court of appeals with its approval, and impliedly made a declaration in regard to what was the law. The language of the statute does not require our Supreme Court to issue a writ of certiorari in any case, but merely provides that it shall be competent for it to do so; nor does it require the court to pass upon the merits of the controversy presented, but leaves that to the discretion of the court, to be exercised in every case. So, in the case cited here, the question considered upon the application for the writ was not necessarily the one as to the correctness of the conclusions of this court. The Supreme Court first had presented to it the question of whether there was anything in the

circumstances of the case which made it expedient for it to pass upon the merits of the controversy and to declare the law. Obviously it was competent for the Supreme Court to go into the merits of the contentions made in the petition, but it was equally competent for it to say that as, under the decision of the Appellate Court, the questions involved would again be presented in a quo warranto proceeding in which all the parties in interest would be before the court, it would be better to pass upon them in that case, in which a binding adjudication of the rights of all the parties could be made. Any inference, therefore, as to the opinion of the Supreme Court in regard to the correctness of the conclusion reached by the Appellate Court must necessarily rest upon speculation and conjecture. The function of finally declaring the law of the State rests with its Supreme Court, and is accomplished by means of its opinions, in which it speaks through its justices. The only safe rule would, therefore, appear to be that its conclusions in regard to the law are to be found in its reported opinions, and not deduced inferentially from its action in denying writs of certiorari. We are aware that in the case of *Soden v. Claney*, 269 Ill. 98, the court remarked that: "It does not follow that such a denial of a petition for the writ of certiorari is an approval of the reasons upon which the Appellate Court bases its judgment, but it is an approval of the conclusion reached, and is therefore, in effect, an affirmance of the judgment"; and later, that: "The effect of denying Claney's petition for the writ of certiorari was to hold that there were no probable grounds for the reversal of the judgment of the Appellate Court so far as it affected the rights of Claney as a defendant in the original bill"; but this language of the court must be taken in connection with the circumstances in which it was used. In that case, the court expressly stated: "These petitions were considered

upon their merits, and the petition of Claney was denied." The case goes no further than to hold that when the Supreme Court has denied a petition for a writ of certiorari, the judgment of the Appellate Court, so far as the petitioner is concerned, will not thereafter be reconsidered. The effect of a denial of a writ of certiorari, though conclusive, is purely negative. By its action, the Supreme Court does not review the judgment of the Appellate Court, but declines to do so. This does not make the judgment of the Appellate Court final, but it leaves its finality undisturbed. For these reasons we are constrained to hold that the action of the Supreme Court in denying the State's Attorney's petition for a writ of certiorari in the case cited does not constitute an authoritative declaration in regard to the questions of law involved, and that so far as any action by the Supreme Court is concerned, these questions are still open. It, therefore, devolves upon us to consider the merits of the points presented.

The first question is, was the election of trustees of the American Medical Association void because held outside the limits of the State of Illinois? Corporations, whether for pecuniary profit or otherwise, have such powers, and such only, as are vested in them by the law of the State under which they are organized. Corporations not for pecuniary profit, such as the association in question, have, by section 32 of the Corporation Act (J. & A. ¶ 2450), been given power to elect trustees "in such manner, at such times and places, and for such periods as may be provided by the certificate of incorporation, or in case such certificate does not contain such provisions, then as may be provided by the by-laws." It will be seen that the place at which the trustees are to be elected is left absolutely to the discretion of the association, without any express qualification. It cannot be doubted that it was within the plenary legislative power of the

General Assembly to authorize corporations of this character to hold elections of trustees at any place, whether within or without the limits of the State. In conferring the power upon the association they have chosen to use language of a broad and unrestricted character, which in itself places no limitation upon the association's choice of place. Had it chosen to limit this authority to places "within the State," presumably it would have done so by the use of those simple and apt words. Cases stating that it is the general rule that corporations have no power to do so-called "corporate acts" outside of the State creating them are clearly not in point; the basis for that rule is an absence of legislative authority, and here, as we have seen, unrestricted authority has been given. But those cases are also inapplicable for another obvious reason. The rule has been evolved and applied only to cases involving business corporations and organizations of a like nature, such as insurance companies and benefit associations, and in regard to such organizations it has been held that, while they may engage in business in other jurisdictions, they may not perform corporate acts outside of the State, unless such authority has been directly conferred upon them, and the cases in which this has been held abound in reasons based upon the jeopardy of the pecuniary interest of the stockholders, and the desirability of keeping the corporate acts of such corporations within the control of the sovereignty creating them. It may well be that this limitation upon the powers of business corporations is the result of judicial legislation, but it seems firmly fixed in the law.

Although we are of the opinion that the Legislature has given express authority to corporations not for pecuniary profit to hold elections of trustees at any place, whether within or without the limits of the State, we are further of the opinion that, in the ab-

sence of such express legislative authority, the decisions which hold that business corporations cannot, in the absence of express legislative authority, hold such elections outside of the State, would not warrant a conclusion that in such circumstances the corporations not for pecuniary profit could not do so. The principles which govern the interpretation of statutory provisions providing for the creation of corporations for pecuniary profit are essentially and necessarily different from those governing the construction of provisions for the incorporation of associations not for pecuniary profit. In the former class, the directors, under the sanction of the State, become the trustees of the fortunes of the stockholders in whole or in part. To a certain extent, both directors and stockholders are relieved from financial responsibility for the acts of the corporation, and there is a concentration of financial power which may, according to circumstances, become greatly beneficial or exceedingly hurtful to the interests of the public. It is, therefore, obviously desirable that acts of a business corporation of a purely corporate nature be done within the domain of its creator, and consequently under its control. Associations not for pecuniary profit, however, are essentially different in their nature; they are organized for the mutual benefit of the members, or for the promotion of the general welfare, or both, and include a multitude of organizations for the advancement of education, science, commerce and industry, and for other beneficent purposes, and, when possessed of a membership of a general character, constitute integrating strands tending to give solidarity to the country in peace and in war. Consequently, there is every reason to give a liberal interpretation to the broad powers permitting them to determine for themselves the questions of where they shall meet, how they shall select their officers, and all other matters of like nature. Again, we must bear

in mind the fundamental principle of statutory con-
struction that a law is to be interpreted in the light
of the circumstances in which it was enacted. We can-
not lose sight of the fact that when the act under
consideration was passed, innumerable associations
not for pecuniary profit existed, having memberships
scattered throughout the country, and accustomed to
meet from time to time in different centers of popula-
tion. This plan had been adopted for the obvious pur-
pose of giving members an approximately equal op-
portunity to attend a general meeting of the associa-
tion, and tended to preserve their unity and the
interest of the members. All this was a matter of
common knowledge, and it was, therefore, with this
in view that the Legislature conferred upon such
organizations power to elect trustees "at such times
and places" as it might determine upon.

It was suggested in the opinion of the court in
*People v. Hoyne, supra,* that this statute says, "as
may be provided by the by-laws," and that the by-
laws in this case do not definitely fix the place at
which the elections shall be held. While that point
is not before us, since it is not covered by the infor-
mation, the by-laws set out in the State's Attorney's
petition for leave to file the information definitely fix
the method by which the place of election shall be
determined; this is, in our view, providing for the
place of election within the meaning of the statute.
On the first question raised by the information, we
are, therefore, clearly of the opinion that the associa-
tion had the power to elect trustees at places outside
of the State of Illinois.

The final question arises, then, as to whether the
method adopted for electing the trustees of the asso-
ciation violated the provisions of the statute. There
is, so far as we know, no principle of law which, in
the absence of statutory provisions, requires that the
trustees of an association or society, not for pecuniary

profit, shall be elected in any particular manner or by any particular method. The statute itself, in the very broadest language, permits such associations to elect their officers "in such manner" as they may see fit to provide in their articles of incorporation or by-laws. We do not see how broader language could be used. Again, we must recall that when the statute was passed, it was a very general custom for political organizations and societies organized for other purposes, which had a large membership, to choose their officers and directors through delegates selected for that purpose. We see nothing unfair or contrary to public policy in permitting organizations having a widely scattered membership to provide for the election of trustees through delegates selected by local groups of members, nor do we see any reason for holding that the Legislature, when it stated that the trustees should be elected in the manner that might be provided by the by-laws, intended, notwithstanding this broad language, impliedly to prohibit the method selected in this particular case and which was in general use at the time the act was passed. Relator's argument in this regard is based upon section 31 of the Corporation Act (J. & A. ¶ 2449), which, in providing for special and annual meetings, says that "At any such meeting, members of the corporation may take part and vote in person or by proxy." What was the purpose of this provision? Obviously it required no legislative enactment to secure to a member the right to take part and vote at an annual meeting of his association. The provision clearly was for the purpose of securing to him the privilege of exercising that right by proxy, and so to take part in the meeting, although it might be physically impossible for him to attend. There is nothing in the statute which expressly or by implication prescribes the nature of the business which shall come before the special and annual meetings of the association; these are

matters of internal regulation left to the association itself and, as indicated, we are of the opinion that the phrase does no more than to secure to a member the privilege of voting by proxy upon such matters as properly come before a meeting. Upon this point also we have arrived at a conclusion different from that reached in *People v. Hoyne, supra.*

While we prefer to follow the former opinions of the Appellate Court wherever possible, the statute expressly provides that such opinions are not to be considered binding upon us except in the same case. From this it seems clearly to be our duty to differ from a former opinion where, after a careful and painstaking consideration of the question involved, we arrive at an opposite conclusion.

For the reasons above stated, the judgment of the Circuit Court is affirmed.

*Affirmed.*

MR. JUSTICE O'CONNOR dissenting:

I am constrained to dissent from my brethren in this case.

In 1911, Dr. G. Frank Lydston presented a petition for an information in the nature of a quo warranto to the State's Attorney of Cook county and requested him to sign it. The petition stated the facts substantially the same as they appear in the instant case. The State's Attorney refused to sign the petition, and thereupon Dr. Lydston filed a petition for a writ of mandamus to compel him to do so. A demurrer was sustained to the petition for mandamus and it was dismissed. An appeal was taken to another division of this court, where by a divided court the judgment was reversed and the cause remanded. *People v. Hoyne,* 182 Ill. App. 42. Thereupon, by agreement of counsel, it was stipulated that appellees in that case should stand by their demurrer so that a decision

might be had by the Supreme Court. The order reversing and remanding the cause was set aside, the demurrer was overruled and final judgment entered in this court awarding a peremptory writ of mandamus commanding the State's Attorney to sign the petition. The case was taken to the Supreme Court, and it was there held that this court was without jurisdiction to enter the judgment appealed from, and it was reversed and the cause remanded to this court with directions to remand the cause to the trial court in accordance with the opinion of this court. The merits of the controversy were in no way passed upon by the Supreme Court; the only question considered was one of practice. *People v. Hoyne,* 262 Ill. 82. After the mandate of this court was filed, the demurrer was overruled, in accordance with the decision of this court. The State's Attorney elected to stand by his demurrer, and a final judgment was entered awarding a peremptory writ of mandamus commanding him to sign and file the petition. He appealed to this court, where the judgment of the trial court was affirmed. *People v. Hoyne,* 195 Ill. App. 51. Thereafter a petition for certiorari was denied by the Supreme Court. Pursuant to the decision of this court, the State's Attorney signed and filed the petition for leave to file an information in the nature of a quo warranto. Leave was granted and the information filed. The defendants demurred to the information, the demurrer was sustained, the information dismissed, and this appeal followed.

I am of the opinion that the law governing this case was declared by the former decisions of this court and the action of the Supreme Court in denying certiorari. It is true that the defendants in this case were not before the court in the former proceedings, and therefore what was there said and done could not be *res adjudicata* against them. *People v. Wayman,* 256 Ill. 151. But the principles of law gov-

erning the controversy were carefully considered and discussed and necessarily determined by this court, and the Supreme Court by denying certiorari made the judgment of this court, under section 121 of the Practice Act (J. & A. ¶ 8658), final. And while such denial by the Supreme Court is not necessarily an approval of the reasons given in the opinion of this court for its judgment, yet it is an approval of the conclusions reached. *Soden v. Claney,* 269 Ill. 98.

In the petition for the writ of mandamus against the State's Attorney, two questions were involved: (1) Whether the trustees of the American Medical Association, an Illinois corporation not for pecuniary profit, could be elected outside of this State; and (2) could the by-laws of the association lawfully provide for the election of trustees by delegates instead of by members. The petition for mandamus sought to compel the State's Attorney to sign a petition for leave to file an information in the nature of a quo warranto, whereby it sought to oust certain trustees of the American Medical Association on the ground that they were illegally acting as such, for the reasons that the election took place outside of Illinois, and was held by delegates in place of by members. If neither of these grounds would invalidate the election of the trustees, then the petition for mandamus against the State's Attorney would not lie. *People v. Healy,* 231 Ill. 629. It was therefore necessary to pass on these two contentions. In the *Healy* case, *supra,* the trial court sustained a demurrer of the State's Attorney to a petition of the People on the relation of certain parties claiming to be members of the Board of Education of Chicago, praying for a writ of mandamus against the State's Attorney commanding him to sign and file a petition for leave to file an information in the nature of a quo warranto on behalf of the People on the relation of the same parties, against certain other persons, call-

ing upon the latter to show by what authority they claimed to be members of the Board of Education of Chicago. In deciding the question, the Supreme Court said there were two questions involved: First, whether the State's Attorney was possessed of an uncontrolled discretion to file or refuse to file the petition; and second, whether the mayor of Chicago had power to remove from office members of the Board of Education. The court there said (634): "If the State's Attorney has such discretion he cannot be coerced by the writ of mandamus, and if the mayor has such power the writ in this case would not be awarded, for the reason that the object sought would be unattainable and the writ useless." And continuing the court said (635): "The second question has been exhaustively argued by counsel on both sides and must necessarily be decided for the reasons above stated." The court there held that the State's Attorney did not have an arbitrary and uncontrolled discretion, and that the mayor did not have the power to remove members of the Board of Education. And while in that case the parties directly interested, viz., the members of the Board who were sought to be ousted, were not before the court, yet the law governing their appointment and removal was necessarily determined. So also in the instant case, the law governing the election of trustees of the American Medical Association was necessarily determined by this court on the former appeals, and when the Supreme Court denied certiorari it was, in effect, an approval of the judgment of this court. In the *Soden* case, *supra,* the court said (101): "By section 121 of the Practice Act (J. & A. ¶ 8658) the judgments or decrees of the Appellate Court are made final in all cases except those wherein appeals and writs of error are specifically required by the constitution to be allowed from the Appellate Courts to the Supreme Court, or

in cases where certificates of importance are allowed by the Appellate Court, or in cases which the Supreme Court may require to be certified to it by certiorari or otherwise. The denial by this court of a petition for certiorari in a case not required by the constitution to be reviewed by this court and where a certificate of importance has not been issued by the Appellate Court makes the judgment of the Appellate Court in that case final. It does not follow that such a denial of a petition for the writ of certiorari is an approval of the reasons upon which the Appellate Court bases its judgment, but it is an approval of the conclusion reached, and is therefore, in effect, an affirmance of the judgment."

I am therefore of the opinion that the action of the Supreme Court in denying the petition for a writ of certiorari was, in effect, an affirmance of the judgment of this court, and that we should follow the law as laid down in the former decisions of this court. The petition now before us is identical with the petition which was before this court on the former appeals, except the substitution of the names of three different trustees who were elected subsequent to the filing of the first petition. The briefs, arguments, authorities cited, and the points now urged are the same as the briefs, arguments, authorities cited and the points urged on the former appeals. So that it conclusively appears, and it is undisputed, that the case was thoroughly presented to this court on the former appeals and to the Supreme Court on the petition for a writ of certiorari.

In the majority opinion the federal statute concerning the issuance of the writ of certiorari by the Supreme Court of the United States is referred to and a portion of the opinion of that court by Mr. Justice Brewer in the case of *Forsyth v. City of Hammond,* 166 U. S. 506, is quoted, where it is said:

The People v. Grant, 208 Ill. App. 235.

"It is evident that it is solely questions of gravity and importance that the Circuit Courts of Appeal should certify to us for instruction; and that it is only when such questions are involved that the power of this court to require a case in which the judgment and decree of the Court of Appeals is made final, to be certified, can be properly invoked."

And the argument is made that because our statute is somewhat similar to the federal statute, by analogy it is only where there are questions of "gravity and importance" involved that our Supreme Court will issue the writ. With this I cannot agree, for it is a matter of common knowledge that at every term of the Supreme Court of this State writs of certiorari are awarded where no such questions are involved; but it appears that the only questions before our Supreme Court on application for the writ is the correctness of the decision of the Appellate Court, and that where the Supreme Court is of the opinion that the decision of the Appellate Court is wrong or involved in considerable doubt, the writ issues. Moreover this argument is directly contrary to the interpretation of the statute by the Supreme Court in the *Soden* case, *supra*.

In an article by Mr. Chief Justice Carter of the Supreme Court of Illinois, in the November, 1917, issue of the Illinois Law Review, the Illinois certiorari law is discussed and the method pursued by the Supreme Court of this State in passing on petitions for certiorari is clearly and exhaustively set forth. The number of petitions filed for the different periods is stated, and it is said that 186 of such petitions were filed in the Supreme Court from July 1, 1916, to July 1, 1917, and that from one-fourth to one-third of the number filed were allowed each year. The Chief Justice there said (p. 239): "The practice of the court is always to allow a petition in any case in which a considerable number of the judges are in doubt whether the case was decided rightly in the trial

court.'' And from a reading of the entire article it is clear that each petition is carefully considered upon the merits with a view to determining whether the Appellate Court has reached the right result between the litigants, and where the Supreme Court agrees with the result the writ is denied; but where the Supreme Court disagrees, or a considerable number of the judges are in doubt on that question, the writ is awarded.

In my opinion, therefore, there is no escape from the conclusion that the law governing the instant case has been passed upon by the Supreme Court; however, if the question of statutory construction were open for our consideration, I would be inclined to agree with the reasoning of the majority opinion.